**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| XUCHANG YINREN TECHNOLOGY CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | Case No.: 1:26-cv-10328<br><br>**Judge Thomas M. Durkin**<br><br>**Magistrate Judge Laura K. McNally** |

**DECLARATION OF ZHENG LIU**

I, Zheng "Andy" Liu, of the City of San Mateo, in the State of California, declare as follows:

1. I am an attorney at law, duly admitted to practice before the United States District Court for the Northern District of Illinois. I am one of the attorneys for Plaintiff Xuchang Yinren Technology Co., Ltd. ("Plaintiff"). Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

2. According to a U.S. Customs and Border Protection (CBP) report, in 2024, CBP made over 32.3 million seizures of goods with intellectual property rights (IPR) violations totaling over $5.4 billion, an increase of $2.6 billion from 2023.[1] Over 97% of the IPR seizures came through de minimis shipments, most of which originated from China and Hong Kong.[2]

3. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[3] The primary source of all those counterfeits, the OECD and others say, is China.[4]

4. A February 2017 report commissioned by Business Action to Stop Counterfeiting and Piracy (BASCAP) and the International Trademark Association (INTA) entitled *The Economic Impacts of Counterfeiting and Piracy* included findings that counterfeit and pirated products account for billions in economic losses, resulting

[1] *See* INTELLECTUAL PROPERTY RIGHTS SEIZURE STATISTICS, FISCAL YEAR 2024, CBP PUB. 3964-0125, U.S. CUSTOMS BORDER PROT., https://www.cbp.gov/sites/default/files/2025-01/IntellectualPropertyRightsSeizureStatisticsFiscalYear2024%20FINAL.pdf (last modified Jan. 16, 2025).
[2] *Id.*
[3] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.
[4] *Id.*; *See also*, *Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.[5]

5. In my experience in combating online counterfeiting over the last ten years, I have observed counterfeiters using a variety of tactics to evade enforcement efforts. Specifically, counterfeiters like Defendants in the present case will often register new e-commerce stores under new aliases once they receive notice of a lawsuit.

6. In my experience, once notice of a lawsuit is received, counterfeiters such as Defendants move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court. Financial account transaction logs that I have reviewed in previous similar cases indicate that counterfeiters transfer and/or attempt to transfer funds to off-shore bank accounts outside the jurisdiction of this Court once they have received notice of a lawsuit. This includes the following specific examples from factually similar cases.

7. In 2025, I represented Plaintiff Shiwen Chen in a case where defendants took deliberate action to avoid an asset restraint. At Plaintiff's motion, a temporary restraining order was granted on November 26, 2025. However, by the time the restraint was placed, the Defendant had already transferred funds to offshore

---

[5] FRONTIER ECON., INT'L CHAMBER COM. BUS. ACTION TO STOP COUNTERFEITING & PIRACY & INT'L TRADEMARK ASS'N, THE ECONOMIC IMPACTS OF COUNTERFEITING AND PIRACY (2017), https://www.inta.org/wp-content/uploads/public-files/perspectives/industry-research/2017_Frontier_Report.pdf.

accounts, leaving the restrained account at a negative balance of $ -6718.71—despite their infringing products' sales volume reached $66,814.43. Defendant moved funds accounts the second they were alerted to the action through third party websites such as https://sellerdefense.cn/shiwen-chen120425/, which regularly monitors and reports newly filed suits that may lead to asset restraints on counterfeiters' seller accounts, including Plaintiff Chen's case. Without a meaningful asset restraint, Plaintiff dismissed the entire action under the belief that pursuing for an injunction and judgment by Court would not have resulted in meaningful recovery to Plaintiff's damages.

8. In my experience, even when defendants are not able to withdraw funds from the accounts, defendants employ other tactics to evade asset restraints. For example, in 2024, I was one of the attorneys representing the Plaintiff Lele Zhang in a case where Defendants took deliberate action to avoid the asset restraint. At a preliminary injunction hearing, the Court issued the asset restraint, and Defendant subsequently obtained counsel and filed a motion to dismiss. Defendant's motion to dismiss was denied, and subsequently defendant's counsel withdrew from the case. When defendant failed to obtain new counsel or file any response to the Court's order, default and default were entered against the Defendant. To date, Defendant has not satisfied the full default judgment.

9. For these reasons, in the absence of an *ex parte* Order, Defendants could and likely would move any assets from accounts in financial institutions subject to this Court's jurisdiction to offshore accounts.

10. Based on my research, there is no treaty between the United States and China establishing recognition of judgments from United States courts in China.

11. Upon information and belief, each named Defendant listed on the Schedule A attached to the Complaint has sold or offered to sell infringing products within the last two months to residents in the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed for sale on each e-commerce store, the price at which the Counterfeit Products were offered for sale, other features commonly associated with e-commerce stores selling counterfeit products, and because Defendants and their e-commerce stores do not conduct business with Plaintiff and do not have the right or authority to use the Trademark-in-Suit for any reason. In addition, each e-commerce store offered shipping to the United States, including Illinois.

12. True and correct copies of screenshot printouts captured on August 27, 2026 showing the active e-commerce stores operating under the Seller Aliases reviewed are attached hereto as **Exhibit A**.

13. Each named Defendant has sold at least one allegedly infringing product to a resident of the State of Illinois. Namely, each named Defendant accepted an order

and payment, for an infringing product to be shipped to the State of Illinois and shipped the infringing product to a resident[6] of the State of Illinois.

14. True and correct copies of receipts showing a purchase of an infringing product sold by each named Defendant to a resident of the State of Illinois within the last two months are attached hereto as **Exhibit B**.

15. There are no currently pending case(s) brought by Plaintiff against any of the named defendants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 6, 2026 in San Mateo, California.

/s/ Zheng "Andy" Liu
Zheng "Andy" Liu
*Counsel for Plaintiff Xuchang Yinren Technology Co., Ltd.*

[6] The name and street address have been redacted from the receipt images at the purchaser's request to protect his personal privacy.