IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| XUCHANG YINREN TECHNOLOGY CO., LTD., | ) | |
| | ) | Case No. 1:26-cv-10328 |
| Plaintiff, | ) | |
| | ) | Honorable Thomas M. Durkin |
| v. | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | ) | |
| | ) | |
| Defendants. | ) | |

**SUNNY BEAUTY AND UNION SMULF INC.'S EMERGENCY MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER AND SUPPORTING MEMORANDUM**

Weihai Senlian Trading Co., Ltd., doing business as Sunny Beauty ("Sunny Beauty" or the "Company"), and Union Smulf Inc., identified by Plaintiff as doing business as www.sunnyextensions.com ("Union Smulf") (together, "Defendants"), move under Federal Rule of Civil Procedure 65(b)(4) and paragraph 11 of ECF No. 20 to dissolve the TRO in its entirety as to both Defendants, including all continuing restraints under ECF Nos. 30 and 31.

## I. INTRODUCTION

This is not a conventional Schedule A case. On July 15, 2026, Sunny Beauty petitioned the Trademark Trial and Appeal Board ("TTAB") to cancel Plaintiff's SUNNY HAIR registration based on its longstanding prior use. Cancellation No. 92092253, 1 TTABVUE at 1, 3–4. On August 13, 2026, Plaintiff's counsel contested that claim, expressly identifying the Company, its Sunny Beauty storefront, and sunnyextensions.com. ECF No. 23-2 at 2–5. Plaintiff thus knew that both scheduled storefronts were claimed as sales channels of its single, identified TTAB adversary.

Plaintiff nevertheless filed this Schedule A action on August 27, 2026 and sought an ex parte TRO on September 6, 2026, concealing the cancellation proceeding while claiming that Defendants' tactics made it "virtually impossible" to learn their true identities. ECF No. 1 ¶¶ 3, 11–12; ECF Nos. 12–13. That portrayal was false and materially misleading as to its already-identified adversary. The two-entry schedule did not transform this known ownership dispute into an anonymous counterfeiting network. ECF No. 2 at 1.

The Company also has a strong defense on the merits. The Declaration of Cui Yuanyuan ("Cui Decl.") attests to continuous U.S. SUNNY HAIR use since 2016, corroborated by a 2016 application with branded specimens, 2017 public branding, and U.S. order records. Cui Decl. ¶¶ 3–4, 8; Exs. B–C, F. Cui also reports sales of at least 200,322 units of SUNNY HAIR products to U.S. customers from September 1, 2024 through August 17, 2025. Id. ¶ 10. Plaintiff claims first use only on August 18, 2025 and filed its application on October 30, 2025. ECF No. 1-1 at 2. That chronology supports cancellation and substantially undermines Plaintiff's claimed right to exclude the Company.

Nor must Sunny Beauty obtain cancellation before its prior-use defense can defeat continued injunctive relief. Amazon has removed 21 listings and placed account disbursements on hold. Cui Decl. ¶¶ 5–6; Ex. D. Defendants request complete dissolution of the TRO while the ownership dispute is litigated.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Company's records corroborate years of earlier SUNNY HAIR use.

The Company operates the Sunny Beauty Amazon storefront. Sunny Hair Beauty is its Seller Central nickname, and A3L9BDXBZAH5C5 is its U.S. merchant token. SUNNY HAIR and VE SUNNY are its hair-product brands. These corporate, storefront, account, and brand

names identify different aspects of the same business, not concealed operators. Cui Decl. ¶¶ 1–2; Ex. A.

Cui Yuanyuan has worked for the Company since June 2015 and has served as General Manager since approximately 2016. Cui attests to continuous U.S. SUNNY HAIR use since 2016. Cui Decl., introductory paragraph and ¶ 3. The Company's November 22, 2016 application, Serial No. 87246071, claims first use in commerce on June 6, 2016, and includes specimens showing SUNNY HAIR tags on hair products. The application was abandoned in 2017 for failure to respond to an Office Action; Sunny Beauty relies on it as contemporaneous corroboration, not as an existing registration. *Id.* ¶ 8; Ex. F at 2–8, 10–11.

An Amazon review dated March 24, 2017 identifies Sunny Hair by name and bears United States and verified-purchase designations. Instagram posts dated September 3, 2017 and October 21, 2017 show SUNNY HAIR packaging. Cui Decl. ¶ 4; Ex. C at 2–4. These materials independently corroborate public branding long before Plaintiff's claimed first use.

Exhibit B contains order-detail, payment, and shipment-confirmation records for three U.S. orders placed on August 31, 2024 and September 1, 2024, with destinations in Oregon, Arizona, and California. Exhibit C includes the California order-detail page. These are examples of a much larger volume of SUNNY HAIR sales. Cui Decl. ¶¶ 3–4; Exs. B–C. Cui's summary of the Company's Amazon sales records shows at least 200,322 units of SUNNY HAIR products sold to U.S. customers from September 1, 2024 through August 17, 2025. Id. ¶ 10. Exhibit G's Seller Central inventory captures additionally display listing dates before Plaintiff's claimed first use for the 21 originally restrained ASINs. Those current captures corroborate listing history, rather than independently proving when each mark first appeared or each product first sold. Id. ¶ 9; Ex. G.

**B. Plaintiff knew the Company's identity and competing claim before suit.**

Plaintiff's SUNNY HAIR Registration No. 8,311,515 issued on June 23, 2026 from its October 30, 2025 application. The certificate claims August 18, 2025 as both first use and first use in commerce. ECF No. 1-1 at 2. On August 13, 2026, Plaintiff's counsel, Zheng Liu, moved to dismiss the Company's priority claim in TTAB Cancellation No. 92092253. He disputed its claimed 2016 use, characterized its Amazon wording as title text rather than branding, and identified its Sunny Beauty storefront and manufacturer-name variation. ECF No. 23-2 at 2–5.

Plaintiff filed this action on August 27, 2026. The amended cancellation petition explained the Company's relationship to its storefront and account names; its certificate reflects email service on Liu on September 2, 2026, before Plaintiff's September 6, 2026 TRO motion. ECF No. 23-3 at 6–8; ECF No. 12. On September 14, 2026, the Board accepted the amended petition and deemed the dismissal motion moot, without deciding priority. ECF No. 23-2 at 6–7.

Schedule A contains only two entries: Sunny Beauty and Union Smulf, the latter identified by Plaintiff as doing business as www.sunnyextensions.com. ECF No. 20 at 10. Both Defendants join this motion. Cui confirms that SUNNY HAIR products are sold through sunnyextensions.com in addition to the Amazon storefront. Cui Decl. ¶ 11. Plaintiff's own earlier TTAB motion quoted the Company's claim to use SUNNY HAIR through "its official website, sunnyextensions.com, and Amazon" since 2016. ECF No. 23-2 at 4. Plaintiff thus knew the asserted connection between both sales channels and its identified TTAB adversary.

**C. The TRO restricts the Company's products and account disbursements.**

The September 9, 2026 TRO restricts sales, advertising, inventory activity, and financial transfers, without a stated dollar ceiling. ECF No. 20 ¶¶ 1–2, 4, 6–7. On September 23, 2026,

Plaintiff moved to add 12 ASINs, alleging continued sales of the same products through different links reviewed between September 9, 2026 and September 21, 2026. ECF No. 26 at 1–4.

The Court granted that motion following a September 24, 2026 telephonic hearing, directed submission of an amended order, and ordered unsealing effective September 25, 2026. ECF No. 30. Amazon's September 25, 2026 notices identify the 21 removed ASINs and a separate funds hold pursuant to this case's TRO. The removal notice explains that a rights-owner retraction may permit reactivation; the funds-hold notice does not identify a restrained balance. Cui Decl. ¶¶ 5–6; Ex. D. The Court subsequently entered an amended TRO on September 30, 2026. ECF No. 31. The amended order remains under seal and is unavailable to Defendants' counsel; Defendants therefore do not purport to describe its precise terms.

For August 10, 2026 through September 10, 2026, Amazon reports 1,052 units ordered and $72,140.77 in ordered product sales for ASIN B01IAYIKHC, and 1,818 units ordered and $44,953.21 for B08RMXWXQM. Both reports show zero units ordered and $0.00 in ordered product sales for September 11, 2026 through September 29, 2026. Cui Decl. ¶ 7; Ex. E. These unequal reporting windows document activity on the affected listings, not net profits, damages, or the amount frozen. That reporting period begins before the September 25, 2026 notices.

## III. LEGAL STANDARD

Preliminary relief requires likely success on the merits, likely irreparable injury, a favorable balance of equities, and consistency with the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 22 (2008). The Seventh Circuit first requires likely success, inadequate legal remedies, and irreparable harm, then weighs the competing harms and public interest on a sliding scale. A mere possibility of success is insufficient. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539–40 (7th Cir. 2021).

Proceeding without notice additionally requires specific sworn facts clearly establishing immediate and irreparable injury before the opponent can be heard, and counsel's written certification of notice efforts and reasons notice should not be required. Fed. R. Civ. P. 65(b)(1). Strict compliance is essential; ex parte relief is reserved for circumstances without a reasonable alternative. *American Can Co. v. Mansukhani*, 742 F.2d 314, 321–23 (7th Cir. 1984).

Rule 65(b)(4) authorizes dissolution on two days' notice, or shorter notice set by the Court, with consideration as promptly as justice requires. Plaintiff retains the burden of establishing entitlement to continuing preliminary relief; the prior ex parte order does not shift that burden. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 441–43 (1974).

## IV. ARGUMENT

### A. Plaintiff cannot establish likely success against this earlier-use record.

#### 1. The evidence substantially supports cancellation based on priority.

Plaintiff is unlikely to establish superior rights against the Company's prior, continuous use. Trademark ownership arises from actual source-identifying use, not registration alone. *S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 665–66 (7th Cir. 2016). Plaintiff's contestable registration is prima facie evidence, subject to proof of earlier rights. 15 U.S.C. §§ 1057(b), 1115(a). A registration that conflicts with another's previously used, nonabandoned U.S. mark and is likely to cause confusion may be cancelled under §§ 1052(d) and 1064(1). Section 1119 authorizes this Court to order that relief in this infringement action.

The evidence strongly favors the Company on priority: Cui attests to continuous U.S. SUNNY HAIR use since 2016, corroborated by the contemporaneous application and branded specimens, dated 2017 public branding, U.S. sales in 2024, and the substantial pre-August 18,

2025 sales summarized by Cui. Cui Decl. ¶¶ 3–4, 8, 10; Exs. B–C, F. That use began years before Plaintiff's claimed August 18, 2025 first use. ECF No. 1-1 at 2. Plaintiff asserts the identical words for the same category of hair products and relies on their allegedly confusing use. ECF No. 13 at 9–10. The Company's earlier protectable use therefore supports cancellation, not Plaintiff's claimed right to exclude it. The abandoned application is corroboration, not the source of priority; the declaration and commercial records must be considered together. *S.C. Johnson*, 835 F.3d at 666, 668–70. The Company initiated this dispute by petitioning the TTAB to cancel this same registration on priority grounds. ECF No. 23-2 at 2–5. Even if the Board suspends that proceeding pending this action, the Company will pursue counterclaims here challenging the registration's validity and seeking its cancellation. See 37 C.F.R. § 2.117(a); 15 U.S.C. § 1119. This evidence substantially undermines Plaintiff's claim to priority and warrants dissolution now.

This District has ordered cancellation on that basis. In *Medscript Pharmacy, LLC v. D&D Pharma LTC, LLC*, No. 18 C 5663, ECF No. 94 at 10 (N.D. Ill. Mar. 11, 2020), the court granted the defendant summary judgment on all infringement and related claims and cancelled both registrations based on priority derived from its predecessor's use. Similarly, *Central Mfg., Inc. v. Brett*, 492 F.3d 876, 881–83 (7th Cir. 2007), affirmed an N.D. Illinois judgment for the established prior user and cancellation of the later registration for baseball bats. These decisions confirm that later registration cannot substitute for superior rights established through actual use.

**2. Prior-use rights remain enforceable even if the registration survives.**

Dissolution does not depend on obtaining cancellation first. Sections 1057(c)(1) and 1115(a) preserve earlier, nonabandoned rights against a later registration. Section 1115(b)(5) likewise protects qualifying innocent, continuous prior use within the market proved. That

market can be national. *S.C. Johnson*, 835 F.3d at 666, 669–70; see J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 26:40 (5th ed. June 2026 update).

In *S.C. Johnson* the Seventh Circuit sustained a finding of nationwide, continuing BUG OFF use, considering actual distribution, catalogs, testimony, and online sales together. It reversed the infringement judgment and ordered the injunction vacated. 835 F.3d at 668–70. The relevant question is the earlier user's actual market, not the state in which the action was filed.

Here, the record supports an established national online business, not an Illinois-only store. Cui attests to continuous U.S. use since 2016, and the sample 2024 orders identify customers in Oregon, Arizona, and California. Cui Decl. ¶¶ 3–4; Ex. B at 2, 6, 9. Cui further reports at least 200,322 units sold to U.S. customers from September 1, 2024 through August 17, 2025. Id. ¶ 10. The later reports show the business's continuing scale: two ASINs alone generated 2,870 units ordered and $117,093.98 in ordered product sales from August 10, 2026 through September 10, 2026. Id. ¶ 7; Ex. E at 2, 4. This argument rests on the combined record of actual trade and continuing use, not Amazon's availability alone.

The priority dispute also bears directly on Plaintiff's effort to restrain SUNNY HAIR sales through sunnyextensions.com. Cui Decl. ¶ 11. Defendants request complete dissolution as to both scheduled sales channels, not an Illinois-only exception or continuation of the TRO pending discovery. Although the ultimate territorial scope of the Company's rights follows the prior use proved, the present record does not justify Plaintiff's blanket restraint of the challenged SUNNY HAIR trade. The Court should lift those restrictions now.

**3. The exhibits show source-identifying branding by the Company.**

Plaintiff's TTAB motion portrayed SUNNY HAIR as descriptive listing text and questioned whether the different business labels identified the same source. ECF No. 23-2 at 4–

5. The exhibits answer those objections: packaging and specimens display SUNNY HAIR, a purchaser identifies Sunny Hair by name, and Amazon's identity records connect the Company to the storefront and account. Cui Decl. ¶¶ 1–4, 8; Exs. A–C, F. This is evidence of a brand used by an identified business, not merely a phrase inserted into a product title.

Disclaiming HAIR does not make the entire SUNNY HAIR designation merely descriptive. Plaintiff itself asserts that the composite is distinctive. ECF No. 1-1 at 2; ECF No. 13 at 5, 9. Inherently distinctive marks need no secondary meaning; descriptive marks do. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768–69 (1992). The inquiry concerns SUNNY HAIR as a whole and its source-identifying use, not the disclaimed component alone. If secondary meaning is required, its acquisition must precede Plaintiff's priority date; Plaintiff's registration does not establish the Company's earlier distinctiveness. McCarthy § 15:4. Cui's account of continuous branded trade, the 2016 specimens, and the dated purchaser review and packaging must be considered together in that inquiry. Cui Decl. ¶¶ 3–4, 8; Exs. B–C, F.

Plaintiff's reliance on visual inspection, pricing, and lack of authorization assumes the disputed priority. ECF No. 14 ¶ 12. A later registrant's permission is not a prerequisite to exercising established prior-use rights. Nor does the shared word "Sunny" dispense with an infringement analysis for the Company's separate VE SUNNY brand. Cui Decl. ¶¶ 1–2. Plaintiff must establish superior rights and actionable use, not simply attach a counterfeiting label to a known competitor's goods.

**4. Additional ASINs do not cure the failure to establish superior rights.**

Plaintiff's amendment motion says it "does not seek new or broader relief" because the additional ASINs concern the same defendant, products, and mark. ECF No. 26 at 4. That

premise makes the prior-use evidence equally relevant to those links. A different product identifier does not change which trademark rights govern the same goods.

Plaintiff's September 21, 2026 screenshots establish what its investigator observed, not when each additional listing was first created. ECF No. 26 at 2–3. Exhibit G concerns the original 21 ASINs, not the 12 added links. Defendants do not seek permission to disregard an operative order; they seek dissolution through the procedure Rule 65 provides. Alleged noncompliance does not eliminate Plaintiff's burden to justify continued injunctive relief against the prior-use record.

Plaintiff previously argued that the TTAB dispute "belongs in a motion under Rule 65(b)(4), not a motion to unseal." ECF No. 29 at 6. This is that motion, supported by the Company's declaration and underlying records rather than the mere existence of a cancellation proceeding.

**B. Plaintiff's misleading ex parte presentation breached the duty of candor.**

Plaintiff's complaint asserted that Defendants' concealment made it "virtually impossible" to learn their true identities and promised amendment upon receipt of credible identity information. ECF No. 1 ¶¶ 11–12. The TRO memorandum repeated that narrative. ECF No. 13 at 4, 7. Yet counsel's August 13, 2026 TTAB motion named the Company, identified Sunny Beauty, and quoted its claim to use SUNNY HAIR through sunnyextensions.com and Amazon. ECF No. 23-2 at 2–5. Those allegations presented a materially false picture of an adversary Plaintiff already knew, not merely an incomplete caption.

Disclosure was mandatory. Local Rule 83.50 adopts the ABA Model Rules of Professional Conduct. Rule 3.3(d) requires an ex parte applicant's lawyer to disclose all known material facts needed for an informed decision, including adverse facts; Comment 14 specifically

addresses TRO applications. Rule 3.3(a)(1) also prohibits knowing factual falsehoods, and Rule 11(b)(3) requires evidentiary support for factual contentions after reasonable inquiry. The existing cancellation, known claimant, and asserted connection between the two storefronts bore directly on priority and the feasibility of notice. Counsel could contest the Company's rights and the relationship between its business names, but could not conceal that dispute while portraying its participants as unknown. ECF No. 23-2 at 3–5; ECF No. 23-3 at 7–8.

The dissipation theory likewise rests on generalized experiences with other sellers. Liu's declaration recounts other cases; Xia describes conduct by operators "like Defendants." ECF No. 15 ¶¶ 5–9; ECF No. 14 ¶¶ 16–20. Neither identifies a pre-TRO act by this Company demonstrating that notice would cause disappearance, destruction of evidence, or fraudulent dissipation. An identified business openly pursuing competing rights required an individualized assessment.

A practical alternative existed: notice through the established TTAB litigation channel and a prompt hearing. Plaintiff waited from August 27, 2026 until September 6, 2026 to seek the TRO without explaining why this known opponent could not be heard. ECF Nos. 1, 12. *American Can* requires scrutiny of notice alternatives and each restraint; even justification for preserving evidence does not justify an ex parte order effectively closing a business. 742 F.2d at 322–23.

*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131–32 (9th Cir. 2006), rejected an ex parte TRO supported by generalized experience with infringers rather than evidence that the known seller would disappear or destroy evidence. The court specifically criticized the omission of prior dealings with that seller. See also McCarthy § 30:34. Here, the omitted TTAB litigation likewise made the known relationship material and notice practicable.

In *Roblox Corp. v. Bigfinz*, this Court required Schedule A counsel to correct course when known facts did not fit the allegations supporting extraordinary relief. No. 23 C 5346, 2023 WL 8258653, at *2 (N.D. Ill. Nov. 29, 2023). Plaintiff knew those facts before filing here. Neither boilerplate nor litigation tactics excused suppressing them. The Court should dissolve restraints obtained through that misleading presentation, rather than continue them on a factual premise contradicted by Plaintiff's own prior filing.

**C. Plaintiff has not established irreparable harm warranting these restraints.**

Section 1116(a) supplies a rebuttable presumption of irreparable harm upon a finding of likely success for preliminary relief. Registration alone does not trigger that finding. The evidence of earlier use defeats Plaintiff's premise that its certificate establishes an exclusive right to stop all of the Company's SUNNY HAIR trade. Plaintiff must first show likely actionable infringement after accounting for the Company's preserved rights.

Even if the Court finds likely actionable infringement and applies the statutory presumption, that presumption does not decide the balance of hardships, justify an asset restraint, or excuse the separate requirements for proceeding without notice. McCarthy § 30:47; Fed. R. Civ. P. 65(b)(1). Plaintiff's repeated categories of reputational and quality-control injury do not answer those distinct questions. ECF No. 14 ¶¶ 22–27; ECF No. 26 at 3. The Court must still weigh the documented disruption of the Company's established trade and determine whether Plaintiff has justified any continued restraints on this record. A presumption of harm from infringement is not a presumption that this Company will dissipate assets before a noticed hearing.

### D. The balance of hardships and public interest favor dissolution.

Amazon's removal and funds-hold notices, together with the reports of zero units ordered for two previously active listings, document the burden on an established business. Cui Decl. ¶¶ 5–7; Exs. D–E. Maintaining the blanket restraints gives the later registrant the practical benefit of excluding its competitor before overcoming substantial evidence of earlier rights. A financial release alone would not restore the restrained trade.

The public interest favors accurate source identification and protection against actual counterfeiting, not treating a later registration as permission to eliminate protected prior use. The strong priority defense, individualized notice defects, and documented business restrictions weigh against continued relief under the sliding-scale analysis. *Life Spine*, 8 F.4th at 539–40.

### E. The restraints should be dissolved in full and existing security preserved.

The original TRO specified fourteen calendar days and an extension-motion deadline of September 22, 2026. ECF No. 20 ¶ 12. The Court later granted the request to add product links and entered an amended TRO on September 30, 2026. ECF Nos. 30–31. The Court should dissolve the continuing restraints in full for the reasons above. Adding identifiers does not dispense with Rule 65. *Granny Goose*, 415 U.S. at 440–45. To the extent continuing relief is treated as a preliminary injunction, Defendants seek dissolution in full under Rules 54(b) and 65(a). Any continuing preliminary injunction should rest on findings addressing this adversarial record. Fed. R. Civ. P. 52(a)(2).

Any security posted for the original or amended restraints, including under ECF No. 20's $5,000 requirement, should remain available pending a proper wrongful-restraint claim.

## V. CONCLUSION AND REQUEST FOR PROMPT CONSIDERATION

Defendants request dissolution of all product, advertising, inventory, domain, and financial restraints against both Defendants under ECF Nos. 20, 30, and 31, including restraints on the Sunny Beauty Amazon storefront and www.sunnyextensions.com. Plaintiff should, within one business day, notify Amazon and other recipients, withdraw the corresponding infringement reports, and request restoration and release. Any posted security should be preserved pending further order.

Notice and conferral: On September 29, 2026, counsel emailed Plaintiff's counsel requesting complete dissolution, giving advance notice of this motion, and proposing a response within two business days of filing and the earliest Court-set hearing. Counsel requested Plaintiff's position and any competing schedule. Counsel also attempted to reach Plaintiff's counsel by telephone, most recently on October 1, 2026, without success. No response or competing proposal has been received. Despite these efforts, counsel have been unable to confer or submit a joint schedule. Defendants request prompt consideration under Rule 65(b)(4) and the proposed expedited schedule, or another schedule the Court directs.

Dated: October 2, 2026

Respectfully submitted,

/s/ Benjamin Solter
Benjamin Solter (CA Bar No. 269388)
Cross-Border Counselor LLP
7755 Center Ave., Suite 1100
Huntington Beach, CA 92647
Direct: (781) 752-6369
bsolter@cbcounselor.com
*Counsel for Weihai Senlian Trading Co., Ltd.,*
*doing business as Sunny Beauty,*
*and Union Smulf Inc.*