IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| XUCHANG YINREN TECHNOLOGY CO., LTD., | ) | |
| | ) | Case No. 1:26-cv-10328 |
| Plaintiff, | ) | |
| | ) | Honorable Thomas M. Durkin |
| v. | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS SUNNY BEAUTY AND UNION SMULF INC.'S ANSWER, AFFIRMATIVE AND OTHER DEFENSES, AND COUNTERCLAIMS**

Defendants Weihai Senlian Trading Co., Ltd., doing business as Sunny Beauty ("Sunny Beauty" or the "Company"), and Union Smulf Inc., identified by Plaintiff as doing business as www.sunnyextensions.com ("Union Smulf") (together, "Defendants"), answer the Complaint (ECF No. 1) of Plaintiff Xuchang Yinren Technology Co., Ltd. and assert the counterclaims specified below. Sunny Beauty and Union Smulf are the two defendants identified on Schedule A.

Cui Yuanyuan's declaration executed October 2, 2026 is filed at ECF No. 34-1, and its Exhibits A–G are filed at ECF Nos. 34-2 through 34-8, respectively, in support of Defendants' motion to dissolve the temporary restraining order ("TRO"), ECF No. 34. The Complaint's allegations are reproduced verbatim below, followed by Defendants' responses; their reproduction is not an admission. An admission expressly made by Sunny Beauty or Union Smulf is made only by that Defendant. Exhibit references within the reproduced allegations refer to Plaintiff's exhibits to the Complaint.

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

**Answer:** Defendants admit that the Court has subject-matter jurisdiction over the federal claims pleaded in the Complaint.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademark to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

**Answer:** Sunny Beauty admits that it operates an Amazon storefront accessible in Illinois, offers shipping to the United States, and accepts payment in U.S. dollars. Sunny Beauty admits that the order summary at ECF No. 18, page 2, identifies Sunny Beauty as the seller and

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

records an order placed on August 26, 2026 and delivered in Chicago on August 27, 2026. Union Smulf admits that the cited order summary identifies Sunny Beauty, not Union Smulf, as the seller. Defendants admit that pages 4–5 of ECF No. 18 depict a September 9, 2026 order through sunnyextensions.com for shipment to Chicago and a $69.99 payment; those pages do not identify Union Smulf by name. Defendants deny that the products depicted were infringing or counterfeit, that either Defendant committed the alleged tortious acts, or that either Defendant caused the alleged injury. Sunny Beauty denies the remaining allegations, except that it does not contest venue on the ground of its foreign domicile. Union Smulf denies the remaining allegations as to it, including that venue is proper as alleged.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, namely hair extensions, wigs, hair pieces, and braiding hair, using infringing and counterfeit versions of Plaintiff's federally registered trademark (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademark, as well as to protect unknowing

consumers from purchasing Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

**Answer:** Defendants deny selling counterfeit products, trading on Plaintiff's goodwill, concealing their identities, or participating in a counterfeit network. Defendants deny the alleged unlawful conduct, confusion, and injury, and deny that Plaintiff is entitled to relief against either Defendant. Defendants deny the remaining allegations.

## III. THE PARTIES

### Plaintiff

4. Plaintiff is a limited company organized under the laws of the People's Republic of China, with its principal place of business at No. 4, West of Building 2, East of Building 3, Xintiandiliduyuan, Wencui Street, Weidu District, Xuchang City, Henan Province, China 461000. Plaintiff designs, manufactures, markets, and sells hair extensions, wigs, hair pieces, and braiding hair.

**Answer:** Defendants admit that Plaintiff is identified in the USPTO records as a Chinese limited company. Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's actual principal place of business and the nature or extent of its business activities and therefore deny the remaining allegations.

5. Plaintiff is the owner of United States Trademark Registration No. 8,311,515 for the mark "SUNNY HAIR" (the "Trademark-in-Suit"), registered on the Principal Register on June 23, 2026, in International Class 26 for hair extensions; wigs; false hair; hair pieces; hair pieces and wigs; hair weaves; and human braiding hair.

| Registration Number | Trademark |
|---|---|
| 8,311,515 | SUNNY HAIR |

**Answer:** Defendants admit that USPTO records identify Plaintiff as the registrant of Registration No. 8,311,515 for SUNNY HAIR, issued on the Principal Register on June 23, 2026, for the goods identified in paragraph 5. Defendants deny that the registration establishes priority over Sunny Beauty's earlier rights or an exclusive right to prohibit the challenged conduct of either Defendant.

6. The above U.S. registration for the Trademark-in-Suit is on the Principal Register and is valid, subsisting, and in full force and effect. The registration for the Trademark-in-Suit constitutes prima facie evidence of its validity, of Plaintiff's ownership thereof, and of Plaintiff's exclusive right to use the Trademark-in-Suit in commerce in connection with the goods identified in the registration. 15 U.S.C. §§ 1057(b), 1115(a). True and correct copies of the United States Registration Certificate for the above-listed Trademark is attached hereto as Exhibit A.

**Answer:** Defendants admit that Exhibit A to the Complaint (ECF No. 1-1) contains a copy of Registration No. 8,311,515 and that a Principal Register registration has the rebuttable prima facie evidentiary effect provided by 15 U.S.C. §§ 1057(b) and 1115(a). Defendants deny that those presumptions are conclusive, that the registration is validly registered over Sunny Beauty's prior rights, or that Plaintiff may enforce it against either Defendant's challenged conduct. Defendants deny the remaining allegations concerning validity and enforceability.

7. The Trademark-in-Suit is distinctive when applied to the Plaintiff's Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards.

**Answer:** Defendants admit that SUNNY HAIR is capable of functioning as a distinctive source-identifying mark for hair products. Defendants deny that Sunny Beauty's SUNNY HAIR-branded products originate with Plaintiff or are manufactured to Plaintiff's standards, and deny that the designation identifies Plaintiff exclusively. Defendants deny the remaining allegations.

8. Plaintiff has used the Trademark-in-Suit continuously in United States commerce since at least as early as August 18, 2025. Plaintiff's marketing and product offerings have enabled the SUNNY HAIR brand to achieve growing recognition among consumers and in the trade in the hair extensions and wigs industry.

**Answer:** Defendants admit that Plaintiff claims August 18, 2025, as its first-use date. Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's actual use, continuity of use, or claimed consumer recognition and therefore deny those allegations. Defendants deny that Plaintiff's claimed use predates Sunny Beauty's use or establishes superior rights against Sunny Beauty.

9. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Trademark-in-Suit. As a result, products bearing the Trademark-in-Suit are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. The goodwill associated with the Trademark-in-Suit is of incalculable and inestimable value to Plaintiff.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's expenditures, promotional activities, or the value of Plaintiff's goodwill and therefore deny those allegations. Defendants deny that SUNNY HAIR is exclusively associated with Plaintiff.

10. Plaintiff's primary source of sales of products protected by the Trademark-in-Suit to consumers, including consumers in the United States, is Amazon.

**Answer:** Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's sources or volume of sales and therefore deny the allegations.

**The Defendants**

11. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

**Answer:** Sunny Beauty admits that it is Weihai Senlian Trading Co., Ltd., a Chinese limited company that owns and operates the Amazon storefront known as Sunny Beauty, and that it has capacity to be sued. Union Smulf admits that Plaintiff identifies it as Defendant No. 2 on Schedule A, doing business as www.sunnyextensions.com, and that it has capacity to defend this action. Sunny Beauty denies that its identity was unknown or undiscoverable by Plaintiff before this action; Sunny Beauty and Plaintiff were already adverse parties in proceedings before the Trademark Trial and Appeal Board ("TTAB"). Defendants deny the remaining allegations.

12. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operations make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact

interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

**Answer:** Defendants admit that Sunny Beauty operates the Sunny Beauty Amazon storefront and that SUNNY HAIR products are also sold through sunnyextensions.com. Defendants deny concealing their identities, participating in a counterfeit network, or making their identities virtually impossible for Plaintiff to ascertain. Defendants deny the remaining allegations.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

13. The success of Plaintiff's brand has resulted in significant counterfeiting of the Trademark-in-Suit. Consequently, Plaintiff regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified numerous fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as PayPal, Amazon, eBay, Temu, and Walmart, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OCED").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

---

[2] See Press Release, Organization for Economic Cooperation and Development, Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property (May 7, 2025), https://www.oecd.org/en/about/news/press-

**Answer:** Defendants deny that the challenged products infringe Plaintiff's rights or are counterfeit, and deny the allegations of unlawful conduct and actionable injury. Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's investigations, third-party activities, or the cited statistics and therefore deny those allegations. Defendants deny the remaining allegations.

14. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned

---

releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[3] Id.; See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024, U.S. Customs and Border Protection.

[4] See Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on U.S. DEPARTMENT OF HOMELAND SECURITY, OFFICE OF STRATEGY, POLICY, AND PLANS, COMBATING TRAFFICKING IN COUNTERFEIT AND PIRATED GOODS at 22 (2020 ), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

[5] COMBATING TRAFFICKING IN COUNTERFEIT AND PIRATED GOOD, supra note 4, at 22.

and operated. [6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

**Answer:** Defendants deny engaging in the alleged concealment or counterfeiting tactics. Defendants lack knowledge or information sufficient to form a belief as to the generalized allegations about platform practices and third parties and therefore deny those allegations.

15. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold Counterfeit Products to residents of Illinois.

**Answer:** Sunny Beauty admits operating an online storefront that offers products to U.S. consumers, including consumers in Illinois, and accepts U.S. dollar payments. Defendants incorporate their respective responses to Complaint paragraph 2 concerning the Illinois order identified in ECF No. 18. Defendants deny selling counterfeit or infringing products, including to Illinois residents, and deny the alleged unlawful targeting of Illinois. Defendants deny the remaining allegations.

16. Defendants use counterfeit and/or confusingly similar reproductions of the Trademark-in-Suit on at least their respective product pages, seller pages, advertisements, product packaging, and/or products themselves. For example, Defendants' listings display the "SUNNY HAIR" mark, and/or marks substantially indistinguishable therefrom, in their product titles and listing images, in connection with hair extensions, wigs, hair pieces,

[6] Id. at 39.
[7] Chow, supra note 4, at 186-87.

and braiding hair that are identical or substantially similar to the goods for which the Trademark-in-Suit is registered in International Class 26. See Exhibit B.

**Answer:** Sunny Beauty admits using SUNNY HAIR in connection with its own hair-extension products and related listings and packaging, including the use depicted in the Amazon materials attributed to Sunny Beauty in Exhibit B to the Complaint (ECF No. 3). Defendants admit that SUNNY HAIR products are also sold through sunnyextensions.com. Defendants deny that the challenged use infringes rights superior to Sunny Beauty's own, constitutes counterfeiting, or falsely identifies the challenged goods as Plaintiff's goods. The admission of trademark use is not an admission of Plaintiff's characterization of the goods as counterfeit or of the authenticity or completeness of that exhibit in all respects. Defendants deny the remaining allegations.

17. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales of Counterfeit Products by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. On information and belief, Plaintiff has not licensed or authorized Defendants to use any of the Trademark-in-Suit in the United States, and none of the Defendants are authorized retailers of Plaintiff's products.

**Answer:** Sunny Beauty admits accepting U.S. dollar payments. Defendants admit that Plaintiff has not licensed or authorized their challenged use of SUNNY HAIR, but deny that Plaintiff's permission is required to exercise Sunny Beauty's prior trademark rights or sell the

Company's goods within the scope of those rights. Defendants deny holding themselves out as authorized retailers of Plaintiff's goods or participating in the alleged coordinated counterfeiting activities. Defendants deny the remaining allegations.

18. Many Defendants also deceive unknowing consumers by using the Trademark-in-Suit without authorization within the content, text, and/or meta-tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiff's products. Other e-commerce stores operating under Seller Aliases omit using the Trademark-in-Suit in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Plaintiff's products.

**Answer:** Sunny Beauty admits using SUNNY HAIR to identify and promote its own hair-extension products, including in online product content. Defendants deny using that designation to pass off the challenged goods as Plaintiff's goods or to divert purchasers seeking goods lawfully identified exclusively with Plaintiff. Defendants deny the alleged deceptive and unlawful conduct. Defendants deny the remaining allegations.

19. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

**Answer:** Defendants deny providing false or misleading registration information or concealing their identities or unlawful operations as alleged. Defendants lack knowledge or information sufficient to form a belief as to the alleged practices of other e-commerce store operators and therefore deny those allegations.

20. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

**Answer:** Defendants deny registering or acquiring seller aliases for the purpose of selling counterfeit products, concealing a counterfeiting operation, or evading liability for the counterfeiting alleged in the Complaint. Defendants lack knowledge or information sufficient to form a belief as to the alleged practices of other e-commerce store operators and therefore deny those allegations.

21. Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

**Answer:** Defendants deny participating in the alleged collective unlawful activity or causing actionable harm to Plaintiff's goodwill or reputation. Defendants deny the remaining allegations.

22. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

**Answer:** Defendants deny operating a counterfeiting network or coordinating efforts to evade detection or liability. Defendants deny participating in the alleged communications to facilitate counterfeiting or evade liability. Defendants lack knowledge or information sufficient to form a belief as to the alleged practices of other e-commerce store operators and therefore deny those allegations.

23. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.

**Answer:** Defendants deny using multiple aliases or financial accounts to evade lawful enforcement and deny transferring funds for the purpose of avoiding any judgment in this action. Defendants lack knowledge or information sufficient to form a belief as to the alleged practices of other e-commerce store operators and therefore deny those allegations. Defendants deny the remaining allegations.

24. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Trademark-in-Suit in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

**Answer:** Defendants deny knowingly or willfully infringing Plaintiff's rights or selling counterfeit goods. Defendants admit that Plaintiff has not authorized their challenged use, but deny that authorization is required to exercise Sunny Beauty's prior rights or sell the Company's goods within the scope of those rights. Defendants deny the remaining allegations.

25. Defendants' unauthorized use of the Trademark-in-Suit in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**Answer:** Defendants deny that their challenged conduct infringes any rights enforceable by Plaintiff against either Defendant or causes the alleged actionable confusion, deception, or irreparable injury.

**COUNT I**

**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

26. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

**Answer:** Defendants incorporate their respective responses to Complaint paragraphs 1 through 25 as though fully set forth here.

27. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Trademark-in-Suit in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Trademark-in-Suit is a highly distinctive mark. Consumers have come to

expect the highest quality from Plaintiff's products sold or marketed under the Trademark-in-Suit.

**Answer:** Defendants deny trademark infringement and counterfeiting. Defendants admit that SUNNY HAIR can function as a distinctive source identifier, but deny that Plaintiff has rights superior to Sunny Beauty's or that the challenged products are represented as Plaintiff's products. Defendants lack knowledge or information sufficient to form a belief as to consumer expectations concerning Plaintiff's product quality and therefore deny those allegations. Defendants deny the remaining allegations.

28. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Trademark-in-Suit without Plaintiff's permission.

**Answer:** Defendants deny past or continuing infringement or counterfeiting. Defendants admit that Plaintiff has not granted permission for their challenged use, but deny that such permission is required to exercise Sunny Beauty's prior rights or sell the Company's goods within the scope of those rights. Defendants deny the remaining allegations.

29. Plaintiff is the exclusive owner of the Trademark-in-Suit. Plaintiff's United States Registrations for the Trademark-in-Suit (Exhibit A) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the Trademark-in-Suit and are willfully infringing and intentionally using counterfeits of the Trademark-in-Suit. Defendants' willful, intentional, and unauthorized use of the Trademark-in-Suit is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

**Answer:** Defendants incorporate their responses to Complaint paragraphs 5 and 6 concerning the registration. Defendants deny that Plaintiff has rights superior to Sunny Beauty's or an exclusive right to prohibit either Defendant's challenged conduct, and deny knowing or willful infringement, intentional counterfeiting, and the alleged actionable confusion. Defendants deny the remaining allegations.

30. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

**Answer:** Defendants deny the allegations.

31. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Trademark-in-Suit.

**Answer:** Defendants deny that Plaintiff lacks an adequate remedy at law or faces irreparable harm caused by either Defendant's challenged conduct, and deny that Plaintiff is entitled to an injunction against either Defendant.

32. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

**Answer:** Defendants deny committing the alleged wrongful acts and deny causing Plaintiff's alleged injuries or damages.

**COUNT II**

**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

33. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

**Answer:** Defendants incorporate their respective responses to Complaint paragraphs 1 through 32 as though fully set forth here.

34. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

**Answer:** Defendants deny falsely representing affiliation, connection, sponsorship, or approval by Plaintiff and deny that their challenged conduct violates rights enforceable by Plaintiff against either Defendant. Defendants deny the remaining allegations.

35. By using the Trademark-in-Suit in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

**Answer:** Sunny Beauty admits using SUNNY HAIR to identify its own goods. Defendants deny that the challenged use constitutes a false designation of origin or a misleading representation of Plaintiff's sponsorship. Defendants deny the remaining allegations.

36. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

**Answer:** Defendants deny the allegations.

37. There is no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the associated goodwill of Plaintiff's brand.

**Answer:** Defendants deny that Plaintiff lacks an adequate remedy at law or faces irreparable harm caused by either Defendant's challenged conduct, and deny that Plaintiff is entitled to relief against either Defendant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1). That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

a. using the Trademark-in-Suit or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, promotion, marketing, advertising, offering for sale, or sale of any product that is not a genuine product manufactured by Plaintiff or is not authorized by Plaintiff to be sold in connection with the Trademark-in-Suit;

b. passing off, inducing, or enabling others to sell or pass off any products as Plaintiff's products or any other products produced by Plaintiff that are not Plaintiff's, or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Trademark-in-Suit;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the Trademark-in-Suit and damaging Plaintiff's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the Trademark-in-Suit, or any reproductions, counterfeit copies, or colorable imitations thereof;

**Answer:** Defendants deny that Plaintiff is entitled to the temporary, preliminary, or permanent injunctive relief requested in paragraph 1 or any of its subparts, and deny the allegations of infringement, counterfeiting, passing off, and injury underlying those requests.

2). Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as PayPal, Amazon, eBay, Temu, and Walmart (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Trademark-in-Suit;

**Answer:** Defendants deny that Plaintiff is entitled to the requested order against online marketplace platforms or other providers concerning either Defendant's advertisements or products.

3). That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Trademark-in-Suit be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

**Answer:** Defendants deny that Plaintiff is entitled to an accounting, profits, damages, or enhanced damages from either Defendant.

4). In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Trademark-in-Suit;

**Answer:** Defendants deny that either Defendant engaged in counterfeiting, willful or otherwise, and deny that Plaintiff is entitled to statutory damages against either Defendant. Defendants further deny that 15 U.S.C. § 1117(c)(2) authorizes a separate award for each and every use of the mark.

5). That Plaintiff be awarded its reasonable attorneys' fees and costs; and

**Answer:** Defendants deny that Plaintiff is entitled to attorney's fees or costs against either Defendant.

6). Award any and all other relief that this Court deems just and proper.

**Answer:** Defendants deny that Plaintiff is entitled to any other relief against either Defendant.

Each Defendant denies every allegation directed to it that it has not expressly admitted above, subject to the specific admissions and Rule 8(b)(5) responses stated above.

## AFFIRMATIVE AND OTHER DEFENSES

1. **Priority and Senior Trademark Rights.** Sunny Beauty has continuously used SUNNY HAIR as a source-identifying trademark for hair extensions in United States commerce, including through Amazon, since 2016. Its use predates Plaintiff's claimed first use on August 18, 2025, and Plaintiff's October 30, 2025 application.

Even if Registration No. 8,311,515 remains in force, Sunny Beauty invokes the independent continuous-prior-use defense under 15 U.S.C. § 1115(b)(5), available against a contestable registration through § 1115(a), together with the preservation of earlier rights under § 1057(c). Sunny Beauty adopted SUNNY HAIR in 2016 without knowledge of any prior use by Plaintiff and has continuously used it since before Plaintiff's October 30, 2025 constructive-use date.

2. **Unclean Hands.** Plaintiff's claim to equitable relief against both Defendants is barred to the extent it knowingly obtained or maintained relief through a materially misleading presentation of the parties' known ownership dispute. Before this action, Sunny Beauty filed TTAB Cancellation No. 92092253 asserting prior SUNNY HAIR rights, and Plaintiff's counsel signed an August 13, 2026 motion addressing those rights, the Sunny Beauty storefront, the Company's claimed use through sunnyextensions.com, and the corporate-name issue. ECF No. 23-2 at 2–5. Plaintiff then instituted Cancellation No. 92092537 against Sunny Beauty's VE SUNNY registration on August 15, 2026; paragraph 24 of that petition expressly identified Sunny Beauty's Amazon storefront. The amended SUNNY HAIR cancellation petition filed September 3, 2026 explained the connection between the storefront and its corporate operator; its certificate states that it was emailed to Plaintiff's counsel on September 2, 2026. ECF No. 23-3 at 6–8.

Nevertheless, Complaint paragraphs 11–12 characterize the defendants' identities as unknown or virtually impossible to ascertain, and Plaintiff's TRO memorandum describes concealed identities and promises to amend if credible identity information is supplied. ECF No. 13 at 4, 7. Plaintiff's TRO declarations further characterize Sunny Beauty's goods as counterfeit based in part on the absence of Plaintiff's permission, without addressing Sunny Beauty's asserted prior rights. ECF No. 14 ¶ 12; ECF No. 15 ¶ 11. On information and belief, Plaintiff sought the ex parte restraints without fairly disclosing the known identity of the competing claimant and its substantial claim of senior use. The challenged conduct is that materially incomplete presentation concerning the very rights and business for which Plaintiff seeks equitable relief, not merely the existence of a pending cancellation proceeding.

3. **Limitations on Monetary Relief.** Defendants deny infringement, counterfeiting, willfulness, and causation of Plaintiff's claimed losses. Any monetary recovery must satisfy the elements, proof requirements, and equitable limitations of 15 U.S.C. § 1117. Statutory counterfeiting damages are unavailable absent qualifying counterfeiting and are measured per counterfeit mark per type of goods or services, not automatically for each listing, sale, or use. Defendants deny that enhanced damages or attorney's fees are warranted. This defense identifies limitations on Plaintiff's requested recovery and does not shift Plaintiff's burden of proof.

## COUNTERCLAIMS

Weihai Senlian Trading Co., Ltd., doing business as Sunny Beauty, asserts Counterclaims I, II, and III against Xuchang Yinren Technology Co., Ltd. ("Xuchang"). Union Smulf joins Counterclaim I only to seek a declaration of noninfringement and no counterfeiting as to the

conduct alleged against it. The claims of trademark ownership and priority, cancellation, and affirmative commercial infringement are asserted by Sunny Beauty, not by Union Smulf.

**Parties, Jurisdiction, and Common Allegations**

1. Sunny Beauty is the Amazon storefront owned and operated by Weihai Senlian Trading Co., Ltd., a company organized under the laws of China. "Sunny Hair Beauty" is the account nickname shown in the same seller account's Seller Central dashboard, and A3L9BDXBZAH5C5 is its United States merchant token. These names identify different aspects of the Company's operations, not different trademark owners. ECF No. 34-1 ¶¶ 1–2; ECF No. 34-2 at 2–6. Union Smulf is separately identified by Xuchang as Defendant No. 2 on Schedule A, doing business as www.sunnyextensions.com. ECF No. 20 at 10. SUNNY HAIR products are sold through sunnyextensions.com in addition to the Amazon storefront. ECF No. 34-1 ¶ 11. Union Smulf is not another name for Weihai Senlian Trading Co., Ltd.

2. Xuchang is a company organized under the laws of China. It claims ownership of United States Trademark Registration No. 8,311,515 for SUNNY HAIR and has asserted that registration against both Defendants in this action.

3. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121. Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202, and the Court may determine the parties' rights to registration under 15 U.S.C. § 1119 in this action involving a registered mark.

4. By bringing this action and seeking affirmative relief against Defendants, Xuchang has submitted to this Court's jurisdiction for counterclaims arising from the same trademark dispute. Venue for these counterclaims is proper in this pending action.

5. Since 2016, Sunny Beauty has continuously used SUNNY HAIR in United States commerce as a trademark identifying its hair-extension products. That use began years before both Xuchang's claimed first use and its filing of the application that matured into Registration No. 8,311,515. Cui Yuanyuan, who has worked for the Company since June 2015 and served as its General Manager since approximately 2016, describes that continuous use. ECF No. 34-1, introductory paragraph and ¶ 3.

6. Sunny Beauty has used SUNNY HAIR as a source identifier in its product titles, brand identifications, and product packaging. Sunny Beauty has sold its branded hair extensions to United States consumers through Amazon. SUNNY HAIR products are also sold through sunnyextensions.com. The mark identifies Sunny Beauty's goods, not goods manufactured by or obtained from Xuchang. ECF No. 34-1 ¶¶ 2–4, 11; ECF No. 34-3 at 2–11; ECF No. 34-4 at 2–5.

7. The records corroborating that use include an Amazon customer review dated March 24, 2017 that identifies Sunny Hair by name and is designated a United States verified purchase, and Instagram posts dated September 3, 2017 and October 21, 2017 showing SUNNY HAIR packaging. Exhibit B (ECF No. 34-3) supplies order-detail pages, associated payment records, and shipment-confirmation emails for three United States SUNNY HAIR orders placed on August 31, 2024 and September 1, 2024, with destinations in Oregon, Arizona, and California. Exhibit C (ECF No. 34-4 at 5) also includes a paid California order dated August 31, 2024. These records predate Xuchang's claimed first use and application. ECF No. 34-1 ¶¶ 3–4; ECF No. 34-3 at 2–11; ECF No. 34-4 at 2–5. Cui's summary of the Company's Amazon sales records reports sales of at

least 200,322 units of SUNNY HAIR products to U.S. customers from September 1, 2024 through August 17, 2025, before Xuchang's claimed first use. ECF No. 34-1 ¶ 10.

8. Sunny Beauty's more recent trademark use is also reflected in its SUNNY HAIR-branded packaging and customer photographs and its Amazon sales records. Xuchang's own purchase exhibit identifies Sunny Beauty as the seller of SUNNY HAIR hair extensions ordered on August 26, 2026 and delivered in Chicago on August 27, 2026, and includes a photograph of SUNNY HAIR-branded packaging. ECF No. 18 at 2–3. That exhibit shows the challenged trademark use; it does not establish that Xuchang's rights predate Sunny Beauty's use.

9. Through its sales and promotion of SUNNY HAIR-branded hair extensions, Sunny Beauty has developed customer recognition and goodwill associated with that mark. SUNNY HAIR, considered as a whole, is a distinctive source identifier for those products, as reflected in the branded packaging and a purchaser's identification of Sunny Hair in the March 24, 2017 review. Alternatively, before Xuchang's claimed August 18, 2025 first use, Sunny Beauty's years of continuous branded sales and promotion had caused United States purchasers to associate the mark with Sunny Beauty as a source of hair extensions. ECF No. 34-1 ¶¶ 2–4, 10; ECF No. 34-3 at 2–11; ECF No. 34-4 at 2–5.

10. Sunny Beauty owns the goodwill and common-law rights arising from that use. The manufacturer designation "Weihai senlian interational trade co.,ltd." appearing in some product records was an informal English rendering of Weihai Senlian Trading Co., Ltd.'s name, not an identification of a separate business owning the SUNNY HAIR trademark rights. The amended cancellation petition explained that naming issue, and Amazon's

identity records identify the Company as the business associated with the storefront. ECF No. 23-3 at 7; ECF No. 34-1 ¶ 1; ECF No. 34-2 at 2–6.

11. Sunny Beauty previously applied to register a stylized SUNNY HAIR mark in Application Serial No. 87246071, filed November 22, 2016. That application claimed use in commerce from June 6, 2016 and included branded specimens. It was abandoned following a failure to respond to an Office action. The application history corroborates the Company's early adoption; Sunny Beauty does not assert that the abandoned application itself creates constructive priority. Sunny Beauty continued using SUNNY HAIR in commerce and did not abandon the mark or its associated goodwill. ECF No. 34-1 ¶¶ 3, 8; ECF No. 34-7 at 2–8, 10–11.

12. Sunny Beauty also owns Registration No. 5,544,653 for VE SUNNY for goods including hair extensions and false hair. The application was filed January 8, 2018, and the registration issued August 21, 2018. SUNNY HAIR and VE SUNNY are separately used brands of Sunny Beauty. ECF No. 34-1 ¶ 2. The VE SUNNY registration supplies an additional basis for challenging Xuchang's later registration; it is not a registration of SUNNY HAIR itself.

13. Xuchang filed Application Serial No. 99470238 for the standard-character mark SUNNY HAIR on October 30, 2025. It claimed first use and first use in commerce on August 18, 2025. The application matured into Registration No. 8,311,515 on June 23, 2026, on the Principal Register, with "HAIR" disclaimed. ECF No. 1-1 at 2.

14. Registration No. 8,311,515 identifies "Hair extensions; Wigs; False hair; Hair pieces; Hair pieces and wigs; Hair weaves; Human braiding hair." Those goods include the hair

extensions for which Sunny Beauty previously used SUNNY HAIR and other closely related hair products.

15. On information and belief, Xuchang has used SUNNY HAIR to advertise, offer, and sell its own hair-extension and related hair products in United States commerce, including through Amazon, and continues to do so. Xuchang itself alleges United States use, competing hair products, and Amazon sales in Complaint paragraphs 4 and 8–10 and describes its products and use in the declaration filed at ECF No. 14. Sunny Beauty has not licensed or authorized Xuchang to use Sunny Beauty's SUNNY HAIR mark.

16. Xuchang uses the identical words SUNNY HAIR on identical or closely related goods marketed to the same class of United States consumers through overlapping online retail channels. In that marketplace context, Xuchang's use is likely to cause purchasers to believe that Xuchang's goods originate with, are sponsored by, or are affiliated with Sunny Beauty.

17. Sunny Beauty initiated TTAB Cancellation No. 92092253 against Registration No. 8,311,515 on July 15, 2026. The petition asserted earlier common-law rights in SUNNY HAIR and rights arising from the earlier VE SUNNY registration. Xuchang appeared through Zheng Liu and filed a partial motion to dismiss on August 13, 2026 that expressly addressed Sunny Beauty's asserted earlier use, Amazon listings, and manufacturer-name issue. ECF No. 23-2 at 2–5.

18. Xuchang then filed TTAB Cancellation No. 92092537 against Sunny Beauty's VE SUNNY registration on August 15, 2026. Paragraph 24 of that petition expressly refers to the "Sunny Beauty" Amazon storefront. Xuchang's own filing thus identified Sunny Beauty's business before it filed this federal Complaint on August 27, 2026.

19. Sunny Beauty's amended petition in Cancellation No. 92092253 was filed September 3, 2026, with a certificate stating that it was served on Zheng Liu on September 2, 2026. It explains the relationship between Sunny Beauty, Sunny Hair Beauty, and Weihai Senlian Trading Co., Ltd. On September 14, 2026, the TTAB accepted that amendment, deemed the pending dismissal motion moot, and set October 13, 2026 for Xuchang's answer or other response. ECF No. 23-3 at 6–8; ECF No. 23-2 at 6–7. That order did not decide the trademark merits.

20. The parties' controversy is immediate and concrete. Xuchang has sued both Defendants for infringement and counterfeiting, asserted exclusive rights in SUNNY HAIR, and sought orders restricting both scheduled sales channels. Sunny Beauty claims the earlier rights. Both Defendants deny that Xuchang may use its later registration to prohibit the challenged trade in the Company's SUNNY HAIR products. Union Smulf also denies that the conduct alleged against it constitutes infringement or counterfeiting.

21. On September 9, 2026, the Court entered a temporary restraining order imposing product-listing and asset restraints and requiring $5,000 in security. ECF No. 20. Its Schedule A identifies twenty-one ASINs for Sunny Beauty. Amazon's September 25, 2026 notices identify those twenty-one removed listings, Xuchang, Registration No. 8,311,515, and this case, and separately confirm a hold on account disbursements pursuant to the TRO. The removal notice states that a retraction submitted directly by the rights owner may permit reactivation. The funds-hold notice states no amount. ECF No. 34-1 ¶¶ 5–6; ECF No. 34-5 at 2–3. The restraints interfere with Sunny Beauty's ability to sell its own branded hair extensions and exercise its claimed prior rights.

22. For August 10, 2026 through September 10, 2026, Amazon reports 1,052 units ordered and $72,140.77 in ordered product sales for ASIN B01IAYIKHC, and 1,818 units ordered and $44,953.21 for ASIN B08RMXWXQM. For September 11, 2026 through September 29, 2026, both reports show zero units ordered and zero ordered product sales, subject to Amazon's final-day availability warning. These figures document the interruption of activity on two affected listings; they are order measures, not net profits, the frozen balance, or a calculation of damages. ECF No. 34-1 ¶ 7; ECF No. 34-6 at 2–5.

23. On September 23, 2026, Xuchang moved to add twelve additional ASINs, alleging that they were being used to evade the original TRO. ECF Nos. 26, 27. On September 24, 2026, the Court granted the motion to amend, directed Xuchang's counsel to submit a proposed amended TRO, and granted Sunny Beauty's motion to unseal effective September 25, 2026. ECF Nos. 30, 32. Sunny Beauty does not admit Xuchang's characterization that the additional ASINs were created to evade the TRO. The presentation of additional product links does not, by itself, establish when those links were created or by whom. The Court subsequently entered an amended TRO on September 30, 2026. ECF No. 31. Defendants seek complete dissolution of the restraints under ECF Nos. 20, 30, and 31 through their motion to dissolve the TRO (ECF No. 34).

24. The Amazon pages saved on October 1, 2026 for the twenty-one originally restrained ASINs display listing-history dates preceding Xuchang's claimed August 18, 2025 first use. ECF No. 34-1 ¶ 9; ECF No. 34-8 at 2–22. Those captures corroborate the history of the original listings, not the creation dates of the twelve additional ASINs. Sunny Beauty bases trademark priority on its actual source-identifying use and sales, not an ASIN's age alone.

25. Defendants seek adjudication of the rights at issue and complete relief from judicial restraints based on Xuchang's contrary claim of ownership. Any claim for compensation for wrongful judicial restraint will be presented under the applicable rules and supported by proof of each claimant's causation and recoverable loss. That requested compensation is distinct from the commercial-infringement relief sought by Sunny Beauty in Counterclaim III.

**COUNTERCLAIM I**

**Declaratory Judgment of Noninfringement and Priority**

26. Defendants incorporate counterclaim paragraphs 1 through 25. Sunny Beauty seeks declarations of priority and noninfringement; Union Smulf seeks a declaration of noninfringement and no counterfeiting as to the conduct alleged against it.

27. Sunny Beauty's prior, protectable rights in SUNNY HAIR are superior to Xuchang's later asserted rights with respect to Sunny Beauty's established trademark use on hair extensions in the markets protected by that prior use. Xuchang's registration does not give it the right to characterize Sunny Beauty's exercise of those earlier rights as infringement or counterfeiting. Independently of cancellation, Sunny Beauty invokes 15 U.S.C. §§ 1057(c), 1115(a), and 1115(b)(5): it adopted SUNNY HAIR without knowledge of any prior use by Xuchang and has continuously used the mark since 2016, before Xuchang's October 30, 2025 constructive-use date. This defense applies in the areas in which Sunny Beauty proves qualifying continuous prior use.

28. Xuchang's claims and requests for restraints create an actual controversy under 28 U.S.C. § 2201 concerning whether either Defendant's challenged conduct violates Xuchang's asserted rights under 15 U.S.C. §§ 1114 and 1125(a). A declaration will resolve the

present uncertainty concerning the Company's SUNNY HAIR goods and sales channels and Union Smulf's alleged liability.

29. Sunny Beauty requests a judgment declaring its priority over Xuchang within the scope of Sunny Beauty's established prior rights. Defendants request a declaration that the challenged use of SUNNY HAIR in connection with the Company's hair-extension products, listings, packaging, and sales through the Sunny Beauty Amazon storefront and sunnyextensions.com does not infringe or counterfeit rights enforceable by Xuchang against either Defendant. Union Smulf seeks that declaration as to the conduct alleged against it, without asserting ownership of the Company's marks. This relief is requested whether or not Registration No. 8,311,515 is cancelled, to the extent of the prior rights and statutory defense established by the evidence.

**COUNTERCLAIM II**

**Cancellation of Registration No. 8,311,515**

**15 U.S.C. §§ 1052(d), 1064(1), and 1119**

30. Sunny Beauty incorporates counterclaim paragraphs 1 through 25.

31. Sunny Beauty is directly damaged by Registration No. 8,311,515 because Xuchang asserts it against Sunny Beauty's earlier trademark use and relies on it to seek restrictions on Sunny Beauty's business. This counterclaim is asserted within five years after the registration issued.

32. Before Xuchang's asserted first use or application date, Sunny Beauty had acquired protectable rights in SUNNY HAIR through its actual use in United States commerce and had not abandoned those rights. Xuchang's registered mark is identical in wording to Sunny Beauty's earlier mark. The registered goods include identical hair extensions and

closely related hair products offered through overlapping channels to overlapping purchasers. Use of Xuchang's mark on the registered goods is therefore likely to cause confusion with Sunny Beauty's earlier mark, and the registration was obtained contrary to 15 U.S.C. § 1052(d).

33. Additionally and in the alternative, Xuchang's SUNNY HAIR registration is likely to cause confusion with Sunny Beauty's earlier registered VE SUNNY mark. The marks, considered in their entireties, share SUNNY, while HAIR describes the goods. The identified goods overlap in hair extensions and false hair and are otherwise closely related. Sunny Beauty relies on the earlier VE SUNNY rights established by its January 8, 2018 application and resulting registration, both predating Xuchang's asserted priority dates.

34. Sunny Beauty requests cancellation of Registration No. 8,311,515 under 15 U.S.C. §§ 1064(1) and 1119 and certification of the Court's order to the Director of the United States Patent and Trademark Office. In the alternative, Sunny Beauty requests cancellation or restriction as to those registered goods for which the Court determines that the registration conflicts with Sunny Beauty's earlier rights.

**COUNTERCLAIM III**

**Trademark Infringement and False Designation of Origin**

**15 U.S.C. § 1125(a)(1)(A)**

35. Sunny Beauty incorporates counterclaim paragraphs 1 through 25.

36. Sunny Beauty owns prior, protectable common-law rights in SUNNY HAIR for hair extensions in the United States markets in which it established those rights. Xuchang's

later, unauthorized use of the same designation on competing hair products is likely to cause confusion as to source, affiliation, sponsorship, or approval, as alleged above.

37. On information and belief, Xuchang's use causes or threatens commercial injury to Sunny Beauty by diverting purchasers and sales of SUNNY HAIR-branded hair extensions and impairing Sunny Beauty's ability to control the goodwill associated with its mark. The threatened injury arises from confusion caused by Xuchang's competing trademark use, not merely from the expense of defending this lawsuit.

38. Xuchang has had actual notice of Sunny Beauty's competing claim of earlier rights at least since its participation in Cancellation No. 92092253. On information and belief, Xuchang has nevertheless continued the challenged competing use. Sunny Beauty seeks an injunction against infringement of its established rights and an accounting and award of the profits, damages, and costs recoverable under 15 U.S.C. § 1117(a), in amounts to be determined on proof. The Amazon order measures described above are not pleaded as Xuchang's profits or as a calculation of damages on this counterclaim.

39. Unless enjoined, Xuchang's confusing competing use threatens continuing loss of customer goodwill and control over Sunny Beauty's mark for which monetary relief alone is inadequate. Sunny Beauty seeks relief under 15 U.S.C. § 1116(a) tailored to its established rights, together with appropriate corrective relief.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants respectfully request the following relief, with relief on Counterclaims II and III and any declaration of trademark ownership or priority requested solely by Sunny Beauty:

A. Enter judgment for both Defendants on Plaintiff's claims and order that Plaintiff take nothing against either Defendant;

B. Enter the declaration of Sunny Beauty's priority and the declarations of noninfringement and no counterfeiting for both Defendants requested in Counterclaim I, including protection for qualifying prior use even if the registration remains in force;

C. Cancel Registration No. 8,311,515, or order the alternative registration relief requested in Counterclaim II, and certify the order to the Director of the United States Patent and Trademark Office;

D. Enjoin Xuchang from using SUNNY HAIR in a manner that infringes Sunny Beauty's established rights and award appropriate corrective relief;

E. Order an accounting and award Sunny Beauty the profits, damages, and costs recoverable on Counterclaim III under 15 U.S.C. § 1117(a), without duplicative recovery;

F. Deny Plaintiff's requests for preliminary and permanent injunctive relief against both Defendants and, upon their motion (ECF No. 34), dissolve all continuing product, advertising, inventory, domain, and financial restraints against both Defendants under ECF Nos. 20, 30, and 31, including restraints affecting the Sunny Beauty Amazon storefront and www.sunnyextensions.com; direct Plaintiff, within one business day after entry of the dissolution order, to notify Amazon and other recipients, withdraw the corresponding infringement reports, and request restoration and release;

G. Award Defendants their taxable costs and, upon the required showing that this is an exceptional case, their reasonable attorney's fees under 15 U.S.C. § 1117(a);

H. Retain any security deposited under ECF No. 20 or a subsequent order pending adjudication of a timely claim against it; and, upon an appropriate motion and a

determination of wrongful restraint, award each Defendant the costs and damages it proves recoverable under Rules 65(c) and 65.1; and

I. Grant such other relief as the Court deems just and proper.

**JURY DEMAND**

Defendants demand a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38.

Dated: October 2, 2026

Respectfully submitted,
/s/ Benjamin Solter
Benjamin Solter (CA Bar No. 269388)
Cross-Border Counselor LLP
7755 Center Ave., Suite 1100
Huntington Beach, CA 92647
Telephone: (781) 752-6369
bsolter@cbcounselor.com
*Counsel for Weihai Senlian Trading Co., Ltd.,*
*doing business as Sunny Beauty,*
*and Union Smulf Inc.*