IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| XUCHANG YINREN TECHNOLOGY CO., LTD., | ) | |
| Plaintiff, | ) | Case No. 1:26-cv-10328 |
| v. | ) | Honorable Thomas M. Durkin |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | ) | Magistrate Judge Laura K. McNally |
| Defendants. | ) | |

**SUNNY BEAUTY AND UNION SMULF INC.'S MOTION TO REQUIRE POSTING OF ADEQUATE SECURITY AND TO LIMIT THE ASSET RESTRAINT AND SUPPORTING MEMORANDUM**

Weihai Senlian Trading Co., Ltd., doing business as Sunny Beauty (the "Company"), and Union Smulf Inc. (together, "Defendants"), move under Federal Rules of Civil Procedure 54(b), 65(b)(4), and 65(c) for an order requiring $150,000 in total security and limiting the Sunny Beauty Amazon account's asset restraint as set forth below. This relief is an alternative to the complete dissolution requested in Dkt. 34, not consent to any restraint, extension, or conversion to a preliminary injunction.

## I. INTRODUCTION

The Court ordered Plaintiff to post a $5,000 bond without adversarial testing. Dkt. 20 ¶ 10. Plaintiff has not posted that bond as of the filing of this motion. The signed Declaration of Cui Yuanyuan ("Cui Decl.") estimates $114,496.85 in loss from 30 additional days of restraints. Cui Decl. ¶¶ 24–28, Ex. U. The ordered bond would cover less than two days at the projected loss rate. The Court should require $150,000 in security now rather than leave the Company to bear almost all of the financial risk while the merits remain unresolved.

Cui's declaration authenticates Exhibits A through U and adopts the loss calculation. Amazon's records identify 21 restricted listings and $1,212,080.72 in frozen funds as of October 9, 2026. Cui Decl. ¶¶ 3–4, 24, Exs. A–B, U. The Company also suspended additional SUNNY HAIR listings after the September 24 hearing because of the continuing restraints. *Id.* ¶ 23. These restrictions prevent sales and deny access to funds needed to keep the business operating. *Id.* ¶ 28.

On October 8, the Court continued the temporary restraining order ("TRO") pending an evidentiary hearing on Defendants' motion to dissolve it. Dkt. 42. Defendants need adequate security while the TRO remains in force, regardless of how the trademark dispute is ultimately decided. The sworn estimate includes lost earnings after specified expenses and interest on a working-capital loan needed because of the freeze. Cui Decl. ¶¶ 24–27, Ex. U. A $150,000 bond covers that estimate with a modest allowance for uncertainty and delay.

The account freeze also should not grow without a demonstrated need. Defendants request an immediate $1,212,080.72 cap, followed by an expedited determination of a supported lower cap and release of the excess. The bond protects Defendants against wrongful-restraint losses; the freeze may preserve Plaintiff's equitable recovery. These are separate questions. The Court should set adequate security now without waiting for the accounting needed to determine a lower freeze cap.

## II. LEGAL STANDARD

Rule 65(c) requires security in an amount the Court considers proper to pay the costs and damages of a party found to have been wrongfully restrained. In *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000), *amended on denial of rehearing*, 209 F.3d 1032 (7th Cir. 2000), the Seventh Circuit directed courts to "err on the high side" when estimating an

injunction bond. An inadequate bond can leave the restrained party without compensation. Setting the bond does not award damages; recovery still requires proof of compensable loss.

Security must also account for the anticipated duration of the restraint. *Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1141–42 & n.6 (7th Cir. 1994), remanded for an explanation of the amount selected and recognized authority to adjust security as circumstances change. Rule 65(c) sets no fixed estimating period. The amount should reflect the losses the continuing injunction is reasonably expected to cause.

The Court may address both security and the scope of the restraint in this motion. Rule 54(b) permits revision of an interlocutory order, and Rule 65(b)(4) permits a restrained party, on two days' notice or such shorter notice as the Court prescribes, to seek modification or dissolution of an ex parte TRO. The original TRO expressly permits such relief. Dkt. 20 ¶ 11. Defendants' pending request for complete dissolution does not require them to accept inadequate security or an unnecessarily broad asset hold in the meantime.

A prejudgment freeze must serve a permissible equitable remedy, not merely secure an ordinary damages judgment. *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002), upheld a freeze because an equitable profits remedy was sought, while distinguishing an action for money damages without an equitable interest. In *Roadget Bus. Pte. Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, 735 F. Supp. 3d 981, 983–85 (N.D. Ill. 2024), a copyright case, the court applied that equitable limitation and reduced an account-wide freeze to supported accused-product gross revenues. *Roadget* also places on the party seeking an exemption the burden to support it with documentary proof. *Id.* at 983. For a Lanham Act profits recovery, Plaintiff must prove the relevant sales, and Defendants must prove claimed costs or deductions. 15 U.S.C. § 1117(a).

This Court's decision in *Bestway Inflatables & Material Corp. v. Holon Supplier*, No. 23 C 2286, 2023 WL 7386062, at *2 (N.D. Ill. Nov. 8, 2023) (Durkin, J.), illustrates that frozen funds and restricted listings can cause separate losses. *Bestway* addressed wrongful-restraint damages after dismissal, not a prospective bond. But the same practical point applies here: releasing funds does not necessarily restore listings or stop sales losses.

## III. ARGUMENT

### A. The sworn loss estimate supports $150,000 in security now.

Cui reviewed the supporting sales, purchase-cost, inventory, shipping, and loan records and adopted Exhibit U's calculation. Cui Decl. ¶ 24. The estimate uses the 31 days from August 10 through September 9, 2026 as its historical baseline, deducts the identified expenses and refunds, and converts the resulting earnings to a 30-day forecast. *Id.* ¶¶ 25–27, Ex. U. It estimates $113,488.39 in lost earnings and $1,008.46 in loan interest, for a total of $114,496.85. *Id.* ¶ 27. The request is based on those losses, not the store's gross sales or frozen account balance.

Losses from the additional SUNNY HAIR listings were a foreseeable result of complying with the TRO. Cui distinguishes the Company's post-September 24 suspensions from the original 21 listings restricted by Amazon. Cui Decl. ¶ 23. The original TRO is not confined to those 21 identifiers: it prohibits unauthorized use of the asserted mark in connection with any product and restricts associated inventory. Dkt. 20 ¶ 1(a), (d). Plaintiff itself argued that the additional product links were already within the TRO and that their express addition would permit Amazon to implement it. Dkt. 26 at 4. Having sought that broad restriction, Plaintiff should provide security for the foreseeable losses from compliance. Defendants would still have to prove causation and recoverable loss in any wrongful-restraint claim.

Exhibit U calculates profits by subtracting purchase costs and shipping from receipts already net of Amazon charges and refunds. It then subtracts the $47,967.21 loss on the original 21 products and $1,496.82 in unassigned refunds. Cui Decl. ¶¶ 24–25, Ex. U at U-1; *see also id.* ¶¶ 10–11, Exs. H–I. The calculation is:

| **31-day baseline calculation (USD)** | **Amount** |
|---|---:|
| Additional affected listings: receipts after Amazon charges and refunds | $728,408.80 |
| Less purchase costs | ($552,716.18) |
| Less shipping to Amazon | ($8,957.25) |
| Earnings from additional affected listings | $166,735.37 |
| Less loss on original 21 products | ($47,967.21) |
| Less unassigned refunds | ($1,496.82) |
| Combined earnings for 31 days | $117,271.34 |
| Lost earnings for 30 days: 31-day earnings × 30 ÷ 31 | $113,488.39 |
| Loan interest for 30 days | $1,008.46 |
| Total estimated additional loss for 30 days | $114,496.85 |

The financing component is separately documented and limited to interest. Cui lent the Company RMB 2,700,000 at 3% annual interest for working capital and product purchases. Cui Decl. ¶ 15, Ex. M. The supplemental confirmation applies interest to the full principal from September 20, 2026 at RMB 225 per day on a 360-day basis. *Id.* ¶ 16, Ex. N. Cui explains that the loan was needed for suppliers and shipping because the Company's funds were frozen, and that 30 days' interest is $1,008.46. *Id.* ¶ 26.

Purchases and supplier deliveries continued under existing orders, and the estimate assumes that products will be restocked as they sell. Cui Decl. ¶ 26. The estimate projects one month from an actual 31-day operating history, not new-product sales or an assumed growth rate. *Id.* ¶¶ 24–27, Ex. U. In *Mead Johnson*, the Seventh Circuit held that uncertainty could justify a lower estimate, but not ignoring a cost certain to be substantial. It also explained that setting the bond does not establish the amount recoverable. 201 F.3d at 887–88. The Court should likewise

set a reasonable bond now, leaving proof of recoverable loss for any later wrongful-restraint claim.

The requested $150,000 exceeds the 30-day estimate by $35,503.15, or approximately nine additional days at the projected loss rate. That modest allowance protects against forecasting uncertainty and a short delay in reassessment. The request does not add unquantified goodwill or ranking losses, ordinary litigation fees, or the frozen account balance. One bond would protect both Defendants without counting the Company's loss twice. The estimate and modest allowance support $150,000 under *Mead Johnson*, 201 F.3d at 888.

**B. Plaintiff should post adequate security promptly, subject to review as losses continue.**

As of the filing of this motion, Plaintiff has not posted the $5,000 bond ordered in Dkt. 20 ¶ 10. Defendants request that Plaintiff post $150,000 in security, in cash or an approved surety bond, by 5:00 p.m. Central time on the second business day after entry of the order, and file and serve proof of posting.

The Court can set an initial bond and review it as the restraint continues. In *Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, No. 20-cv-3471, Dkt. 272, at 38–40 (N.D. Ill. Oct. 16, 2020), the court set a $750,000 bond using an expected duration of at least six months, rejected a 35-to-40-month worst-case projection, and required monthly reports on adequacy. The same approach is appropriate here: a supported estimate, followed by review as needed.

The increase should be ordered while the restraint continues. *Mead Johnson & Co. v. Abbott Labs.*, 209 F.3d 1032, 1033–34 (7th Cir. 2000), rejected an increase sought after reversal of the injunction but explained that an increase during continuing relief provides additional protection. Waiting can leave losses that a later bond cannot cover. Defendants seek security for

continuing restraints, not retroactive liability for a new surety or a decision on any earlier wrongful-restraint claim.

Any later review should account for covered losses already incurred and reasonably expected additional losses, rather than reset the bond each month. If the Court expects a substantially longer restraint, it should require a larger bond or promptly order a further increase. The $150,000 request is an initial amount, not a concession that it will remain adequate indefinitely.

The bond should remain in force until further order, even after the forecast period or injunction ends. Defendants should receive notice and an opportunity to respond before any discharge. A bond continues to secure potential wrongful-restraint damages after the injunction ends. *Mead Johnson*, 209 F.3d at 1033–34. Neither the forecast period nor release of funds should automatically reduce or discharge it. Losses from restricted listings may continue after account funds are released. *See Bestway*, 2023 WL 7386062, at *2.

If Plaintiff fails to post the ordered security, Defendants request prompt dissolution by the Court and an order requiring Plaintiff to notify Amazon and other affected recipients to remove the restraints. Plaintiff should not retain preliminary relief without the protection required under Rule 65(c). Defendants seek a court order, not permission to disregard an existing restraint.

This Court followed that approach in *Zhang v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A to Compl.*, No. 24-cv-12835, Dkt. 46, at 1 (N.D. Ill. Jan. 15, 2025). The Court denied reconsideration of a $200,000 bond, required posting the next day, and stated that it would dissolve the TRO for noncompliance. It left the other dissolution arguments for a later preliminary-injunction hearing. Adequate security here likewise should not await resolution of all grounds for dissolution.

### C. The Court should cap the freeze now and promptly determine a supported lower amount.

The freeze covers the entire account, but any equitable recovery must be tied to Plaintiff's claim. The original TRO prohibits Defendants from transferring funds and directs third parties to hold their financial accounts. Dkt. 20 ¶¶ 2, 7. Cui identifies $1,212,080.72 as frozen on October 9 and explains the Company's need for operating funds. Cui Decl. ¶¶ 4, 26, 28, Ex. B. An account balance is not, by itself, a measure of recoverable profits. The Court should not allow the restraint to increase simply because additional funds enter the account.

This Court has granted the same combination of relief in another trademark case. In *Revelyst Adventure Sports LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 26-cv-00698, Dkt. 82, at 1 (N.D. Ill. Mar. 23, 2026), the Court reduced the asset restraint to $100,000 and raised the bond to $500,000. It later denied reconsideration. *Id.*, Dkt. 95 (Apr. 9, 2026). Those amounts reflect a different record, not a formula for this case. The decision shows that a lower freeze and a higher bond can be appropriate together. Each addresses a different risk.

*Roadget* provides the appropriate model for narrowing the hold without prejudging liability. There, reliable platform evidence established accused-product revenues, and the growing account-wide restraint inflicted increasingly disproportionate harm. The court capped the freeze at gross revenues rather than rely on disputed cost deductions. 735 F. Supp. 3d at 984–85. Defendants request the same approach here. Once the Court determines the amount needed to preserve a potential equitable recovery, the excess should be released for business operations.

In the meantime, the Court should immediately cap the Amazon restraint attributable to this case at $1,212,080.72, the documented October 9 balance. Cui Decl. ¶ 4, Ex. B. Amazon should release any excess held solely because of this action and stop adding to the case-related

reserve above that amount. This interim cap would stop the freeze from growing while the parties establish whether a lower amount is justified. It would not establish Plaintiff's right to the full balance, increase any smaller existing limit, or require Defendants to add funds.

Plaintiff's response should identify the accused ASINs and product links, the sales period, the equitable remedy the freeze is intended to preserve, and the evidence supporting the amount it seeks to retain. The parties should supply relevant platform sales and account records already obtained, including responsive information received under Dkt. 20 ¶ 5(b), with declarations explaining their coverage. Defendants request leave to supply a complete accused-product revenue calculation and supported deductions with their reply. If reliable gross revenues establish a lower ceiling but costs remain disputed, the Court can follow *Roadget* and reduce the freeze without resolving those deductions. 735 F. Supp. 3d at 984–85. The availability of statutory damages does not, standing alone, establish the equitable basis for an unlimited freeze. See *CSC Holdings*, 309 F.3d at 996.

The implementing order should identify the Sunny Beauty storefront, whose Seller Central account name is Sunny Hair Beauty, and modify both the prohibition on Defendants' transfers and the hold imposed on third parties, including any continuing restraints under Dkts. 20 and 31. Cui Decl. ¶ 1. Released funds should be available for ordinary business operations without violating this case's transfer prohibition. Independent Amazon reserves and restraints in other cases would remain unaffected. This relief would not restore listings, automatically reduce the bond, or decide the full dissolution request in Dkt. 34.

**IV. CONCLUSION**

Conferral and proposed schedule: On October 14, 2026, at approximately 9:35 a.m. Central time, defense counsel emailed Plaintiff's counsel requesting agreement to increased

security, a freeze cap, release of excess funds, and no further accumulation above the cap. Plaintiff's counsel replied at 5:09 p.m. Central time that he could speak the next morning. In a further email at 5:32 p.m. Central time, he proposed 11:30 a.m. on October 15 and said he would return the call if his other case prevented him from answering. On October 15, defense counsel called twice at the number provided, most recently at 3:32 p.m. Central time (1:32 p.m. Pacific time). Both calls went directly to voicemail, and counsel left messages. At 3:37 p.m. Central time, counsel emailed again, noting both attempts and advising that the motion would be filed before 5:00 p.m. Central time absent a response. As of the filing of this motion, defense counsel has received no return call or response to that follow-up email. No telephone conference has occurred, and no agreement on relief or scheduling has been reached. Defendants remain available to confer and request leave to proceed on this record. Applying Rule 6(a), Defendants request a response by October 19 and a reply by October 21, 2026, subject to Court approval. The Court should address security promptly, without waiting for the asset-cap submissions.

Defendants request $150,000 in security by 5:00 p.m. Central time on the second business day after entry, review of the amount as losses continue, and preservation of the bond until further order. They also request an immediate $1,212,080.72 cap on Amazon funds restrained solely in this case, release of any excess, and an expedited determination of a supported lower cap. If Plaintiff fails to post the ordered security, the Court should dissolve the restraints and direct prompt implementation. Defendants preserve the complete dissolution requested in Dkt. 34 and all defenses, counterclaims, and objections.

Dated: October 15, 2026

Respectfully submitted,

/s/ Benjamin Solter
Benjamin Solter (CA Bar No. 269388)
Cross-Border Counselor LLP
7755 Center Ave., Suite 1100
Huntington Beach, CA 92647
Direct: (781) 752-6369
bsolter@cbcounselor.com

*Counsel for Weihai Senlian Trading Co., Ltd., doing business as Sunny Beauty, and Union Smulf Inc.*