**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| XUCHANG YINREN TECHNOLOGY CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | Case No.: 1:26-cv-10328<br><br>Judge Thomas M. Durkin<br><br>Magistrate Judge Laura K. McNally |

**MEMORANDUM IN OPPOSITION TO MOTION TO INCREASE INJUNCTION BOND**

## I. INTRODUCTION

A district court may "waive the requirement of an injunction bond" when "the court is satisfied that there's no danger that the opposing party will incur any damages from the injunction." *Habitat Educ. Ctr. v. United States Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010). "The burden of establishing the bond amount rests with the party to be restrained, who is in the best position to determine the harm it will suffer from a

wrongful restraint." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 911 (N.D. Ill. 2015)[1].

Here, Defendants do not seriously dispute infringement and failed to meet their burden of proving the need to increase bond. First, Defendants put forth little evidence to refute infringement, only that they have tried to cancel Plaintiff's registered trademark and that a different company had sold similarly named product. Neither is a defense to trademark infringement, however.

Second, Defendants' claimed loss "rest on its say-so rather than a statistical analysis. Like many other internal projections, these represent hopes rather than the results of scientific analysis." *Zenith Elecs. Corp. v. WH-TV Broad. Corp.* (7th Cir. 2005) 395 F.3d 416, 419.

Worse, Defendants "data" are patently false. After being restrained *twice* for selling infringing products, Defendants once again began selling the same infringing products on at least three Tiktok stores[2] and two newly-created websites (https://sunnyhairpro.com/ and https://www.sunnyhairtop.com/). Defendant's claimed

---

[1] Collecting cases: *In re President Casinos, Inc.*, 360 B.R. 262, 266 (B.A.P. 8th Cir. 2007); *APR Energy, LLC v. First Inv. Grp. Corp.*, No. 3:14-CV-575-J-34JBT, 88 F. Supp. 3d 1300, 2015 U.S. Dist. LEXIS 20524, 2015 WL 736275, at *17 (M.D. Fla. Feb. 20, 2015); *Philips Electronics N. Am. Corp. v. Hope*, 631 F.Supp.2d 705, 724 n. 14 (M.D.N.C.2009); *Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 566 (S.D.N.Y. 2006), *aff'd*, 246 Fed. App'x 73 (2d Cir. 2007).

[2] https://www.tiktok.com/t/ZP9D8W1uYLVGY-Vhim7/
https://www.tiktok.com/t/ZT9D8nmg6xLcb-eQk45/
https://www.tiktok.com/t/ZP9D8W2pBe7H6-IGZCZ/

loss do not account for any of these additional income generated from their ongoing infringing sales and are thus patently unreliable.

In sum, not seriously disputing their liability for infringement and relying solely on the corporate owner's say-so, Defendants' motion to increase bond should be denied. There exists "no danger that [Defendants] will incur any damages from the injunction." *Habitat Educ. Ctr.*, 607 F.3d at 458.

## II. LEGAL STANARD

### A. A Registered Trademark Enjoys A Strong Presumption Of Validity.

"Registration under the Act affords the registrant a rebuttable presumption of validity: [A] mark registered on the principal register . . . shall be prima facie evidence of the validity of the registered mark . . . and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein …." *CAE, Inc. v. Clean Air Eng'g, Inc*. (7th Cir. 2001) 267 F.3d 660 (citing 15 U.S.C. § 1115(a)).

"A federally registered trademark is prima facie evidence of the registrant's exclusive right to use that mark in commerce, 15 U.S.C. § 1115(a), and is entitled to 'a strong presumption of validity.'" *Specialized Seating, Inc. v. Greenwich Indus., L.P.* (N.D.Ill. 2007) 472 F.Supp.2d 999 (citing *Coca-Cola Co. v. Overland, Inc*., 692 F.2d 1250, 1254 (9th Cir. 1982)).

**B. The Burden Of Proving Necessity For A Bond Increase Is On The Movant.**

"The burden of establishing the bond amount rests with the party to be restrained, who is in the best position to determine the harm it will suffer from a wrongful restraint." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 911 (N.D. Ill. 2015).

## III. DISCUSSIONS

### A. Low Bond[3] Suffices Because Defendants Do Not Seriously Dispute Infringement.

"The purpose of an injunction bond is to compensate the defendant, in the event he prevails on the merits, for the harm that an injunction entered before the final decision caused him." *Ty, Inc. v. Publications Intern. Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002). A bond is optional when "the court is satisfied that there's no danger that the opposing party will incur any damages from the injunction." *Habitat Educ. Ctr.*, 607 F.3d at 458. It follows that the less Defendants has disputed infringement, the less bond is required.

Here, the current bond suffices: Defendants have not put forth any serious evidence to rebut the "strong presumption of validity" enjoyed by Plaintiff's registered trademark. In the motion to increase bond, Defendants do not even discuss, let alone, dispute the validity of Plaintiff's registered trademark. Thus far, Defendants have only

[3] Plaintiff's prior bond payment was returned due to a miscalculated postage; Plaintiff has since re-mailed the Clerk of the Court the bond payment. The undersigned counsel apologizes for the inadvertently error.

proposed two theories on which Plaintiff's registered trademark might be found invalid: (A) Defendants have petitioned to cancel Plaintiff's registered trademark; (B) Defendant Weihai Senlian have prior use rights against Plaintiff's registered trademark. Dkt. 34. Neither theory has seriously rebutted rebut the "strong presumption of validity" of Plaintiff's registered trademark, however.

First, simply trying to cancel a registered trademark does not lessen Defendants probability of infringement. Indeed, Defendants have churned through three different law firms in the last three months[4], suggesting that its attempts to cancel Plaintiff's registered trademark is faltering.

Second, as detailed in Dkt. 40, Defendants' prior use argument fares no better. Defendants' assertion and purported evidence of prior use are contradicted by their earlier statements made before the trademark board. Before this Court, Defendant Sunny Beauty claims that the sales records show that it has used the Plaintiff's trademark since 2016; but before the Trademark Board, Defendant Sunny Beauty concedes that it had *doctored* these exact sales record to replace the name of a different company with its own name.

[4] https://ttabvue.uspto.gov/ttabvue/v?pno=92092253&pty=CAN&eno=1

| *Defendants' present assertions* | *Defendants' submissions to the Trademark Board* |
|---|---|
| "An Amazon review dated March 24, 2017 identifies Sunny Hair [Weihai Senlian Trading Co., Ltd.] by name. " | **Product details**<br>**Is Discontinued By Manufacturer :** No<br>**Product Dimensions :** 16 x 1 x 1 inches; 4.23 ounces<br>**Item model number :** CP_P16-22_16<br>**UPC :** 714890854697 732083216350<br>**Manufacturer :** Weihai senlian interational trade co.,ltd<br>**ASIN :** B01IAYIJCI<br>**Best Sellers Rank:** #4,643 in Beauty & Personal Care (See Top 100 in Beauty & Personal Care)<br>#13 in Hair Extensions |
| Defendant Weihai Senlian Trading Co., Ltd. and Defendant Union Smulf Inc. are different entities; and only Defendant Union Smulf Inc. operates website, sunnyextensions.com. | Petitioner [Weihai Senlian Trading Co., Ltd.] has continuously used the SUNNY HAIR mark in U.S. commerce in connection with its products ***through its official website, sunnyextensions.com….*** |

Having put forth no serious evidence to rebut the "strong presumption of validity" of Plaintiff's registered trademark. A low bond suffices because the court can be "satisfied that there's no danger that the opposing party will incur any damages from the injunction." *Habitat Educ. Ctr.*, 607 F.3d at 458.

### B. Defendants' Claimed Potential Loss Is Exaggerated And Lack Factual Support.

In data science, the concept of garbage in, garbage out (GIGO) describes the situations where flawed, biased or poor quality (garbage) information or input produces a result or output of similar ("garbage") quality. Defendants' present loss estimate is exact that.

***First***, the declarant Ms. Yuanyuan Cui has no credibility. Ms. Cui solely owns the Defendant Weihai Senlian Company (Dkt. 41-1), but she has never disclosed her 100% ownership to the Court. In fact, Defendant Cui has never filed any certificate of interested party, a statement of disclosure, or the like identifying her sole ownership. In fact, Ms. Cui camouflages her role as a regular employee whenever she submits declaration to this Court. Dkts. 34-1 and 43-1.

***Second***, Ms. Cui has twice evaded the Court's restraining order. Each time, to continue selling the same products restrained by this Court, Ms. Cui either sells the same the same restrained products under different ASINs or opens new Tiktok stores and websites. For example, immediately after this Court issued the first TRO on September 9, 2026 TRO, Ms. Cui created additional 21 ASINs to evade the Court's TRO. For another example, after the Court's September 30, 2026 Amended TRO, Ms. Cui used three Tiktok stores located at https://www.tiktok.com/t/ZP9D8W1uYLVGY-Vhim7/, https://www.tiktok.com/t/ZT9D8nmg6xLcb-eQk45/, and https://www.tiktok.com/t/ZP9D8W2pBe7H6-IGZCZ/ as well as two additional newly-created websites (https://sunnyhairpro.com/ and https://www.sunnyhairtop.com/) to purportedly advertise a different brand (Ve Sunny). Test buys revealed that Ms. Cui continues selling the restrained Sunny Hair products using these newly-created website and links. Declaration of Pengfei Xia ("Xia Decl.") at ¶¶ 9-14.

In sum, Ms. Cui's own conduct so far proves that she will do anything and say anything to evade the Court's lawful orders: Ms. Cui's declaration about any estimated loss is worthless. Garbage in, garbage out.

***Third***, Ms. Cui's loan agreement with herself (dkt. 43-14) is a farce and has no evidentiary value whatsoever. Due to her 100% ownership (dkt. 41-1), Ms. Cui and Defendant Weihai Senlian are the same entity. 100% of Defendant Weihai Senlian's profit goes to Ms. Cui, and Ms. Cui's funds are Defendant Weihai Senlian's. Ms. Cui's loan agreement with herself (dkt. 43-14), however, purports to require Ms. Cui to (i) mediate with herself if Ms. Cui has a dispute with herself about her own repayment and to (ii) pay a penalty to herself if Ms. Cui fail to pay herself on time. The list goes on.

***Forth***, Ms. Cui has no required qualification to estimate any loss for her own company Defendant Weihai Senlian. The Seventh Circuit has made it clear that loss estimates cannot "rest on [a defendant's] say-so rather than a statistical analysis. Like many other internal projections, these represent hopes rather than the results of scientific analysis." *Zenith Elecs. Corp.*, 395 F.3d at 419. "Reliable inferences depend on more than say-so, whether the person doing the saying is a corporate manager or a putative expert." *Ibid*. Moreover, a 100% shareholder cannot estimate loss for her corporation, without first showing that they are qualified. Because such estimate by corporate officers "depend on the inferences to be drawn from the raw data, rather than these data (or their internal appreciation) themselves." *Ibid*.

Here, the Court cannot rely on Ms. Cui's say-so. Beside her lack of trustworthiness and history of violating this Court's orders, Ms. Cui is simply unqualified to estimate potential loss. Ms. Cui does not offer any evidence that she has the necessary academic studies or professional training to estimate damages. Ms. Cui's declaration, at best, says she obtained screenshots from some unknown sources (dkt. 13-1, ¶¶ 3-22) and suddenly "adopted its calculation" of her claimed loss (Dkt. 13-1, ¶24.) Who conducted "its" calculation? Ms. Cui does not say and probably does not even understand. In essence, Ms. Cui simply "adopts" various number about which she has no idea, and asks the Court to increase the bond by twenty folds. The Ms. Cui's say-so should be rejected under *Zenith Elecs. Corp.*, because a legate loss estimate cannot "rest on [a defendant's] say-so" but instead must be built on "a statistical analysis." *Zenith Elecs. Corp.*, 395 F.3d at 419.

**C. The Asset Freeze Should Not Be "Capped."**

Defendants argue that the freeze should be capped, because additional funds have entered their account. The problem with this argument is that Defendants' ill-made profits are continuing because they have repeatedly sold—are still selling—infringing products, despite the court having issued two TROs enjoining these sales.

For example, immediately after this Court issued the first TRO on September 9, 2026 TRO, Ms. Cui created additional 21 ASINs to evade the Court's TRO. For another example, after the Court's September 30, 2026 Amended TRO, Ms. Cui used three

Tiktok stores located at https://www.tiktok.com/t/ZP9D8W1uYLVGY-Vhim7/, https://www.tiktok.com/t/ZT9D8nmg6xLcb-eQk45/, and https://www.tiktok.com/t/ZP9D8W2pBe7H6-IGZCZ/ as well as two additional newly-created websites (https://sunnyhairpro.com/ and https://www.sunnyhairtop.com/) to purportedly advertise a different brand (Ve Sunny). Test buys revealed that Ms. Cui continues selling the restrained Sunny Hair products using these newly-created website and links. (Xia Decl. at ¶¶ 9-14) Of particular concern, Defendants are selling restraining products (Sunny Hair hair extensions) under the advertisement of a different brand (Ve Sunny).

Thus, Defendants' dishonesty and patently illegal conduct undermine its present assertion that Defendants could somehow separate funds collected based on their sales records. In fact, Defendants' current sales rely on cheating around the Court's TROs. Any numeric proposals by Ms. Cui is untrustworthy.

**D. Defendants Have No Estimated Loss.**

Based on the analysis of Wei Liang, Defendants have suffered no loss. Mr. Wei Liang is a professional accountant with twenty-four years of experience in cost accounting, financial statement analysis, profit-and-loss analysis, accounting for online marketplace sellers, and lost-earnings analysis. Declaration of Wei Liang ("Liang Decl.") ¶ 1. Wei Liang reviewed Ms. Cui's declaration (Dkt. 43-1) and the very exhibits on which Defendants' loss estimate rests: Exhibit H (Dkt. 43-9), Defendants' own sales and

expense report, and Exhibit U (Dkt. 43-22), Defendants' own loss calculation. *Id.* ¶ 2. Every figure in that analysis is taken from Defendants' own exhibits and can be independently verified from them. *Id.* The analysis shows that Defendants will suffer no loss from 30 additional days of restraints.

First, Defendants' claimed loss hinges on a single unsupported number. Exhibit U arrives at its claimed loss of $114,496.85 by deducting $552,716.18 in "purchase costs" from $728,408.80 in receipts net of Amazon charges and refunds. *Id.* ¶ 3. That purchase-cost figure is the largest deduction in the calculation and drives the result: every dollar by which it is understated becomes a dollar of claimed loss. *Id.* ¶ 4. Yet Defendants provide no breakdown or total of the cost of the goods actually sold during the August 10 – September 9, 2026 period from which the $552,716.18 could be verified. *Id.* ¶ 5. To the contrary, the product-cost entry in Defendants' own Exhibit H is $0. *Id.* Defendants' calculation thus rests on exactly the kind of unverifiable "internal projection[]" that "represent[s] hopes rather than the results of scientific analysis." *Zenith Elecs. Corp.*, 395 F.3d at 419.

Second, measured against the industry norm, Defendants understate their cost of goods sold by more than $118,000. Where a seller's actual cost of goods sold cannot be verified from its records, the accepted accounting approach is to apply the cost ratio prevailing in the seller's industry to the seller's sales. Liang Decl. ¶ 6. In the hair-extension and wig industry, product cost is approximately 60% of sales. *Id.* Applying

that ratio to the $1,118,956.63 in total sales that Defendants' own Exhibit H reports for the period yields an estimated cost of goods sold of $671,373.98. *Id.* ¶ 7. Defendants' claimed purchase cost of $552,716.18 is only 49.4% of sales, understating the cost of goods sold, and overstating earnings, by $118,657.80. *Id.* ¶ 8.

Third, once that single figure is corrected, Defendants' claimed loss disappears. Keeping every other line item exactly as Defendants reported it in Exhibit U and substituting only the estimated cost of goods sold, the Company's combined result for the 31-day period is a loss of $1,386.46. *Id.* ¶ 9. Using Defendants' own method of converting that result to 30 days, the Company was operating the affected listings at a loss of approximately $1,341.73 per 30 days. *Id.* ¶ 10. Even crediting Defendants with the full $1,008.46 in claimed interest on Ms. Cui's loan to herself, which, as shown above, is no genuine obligation at all, 30 additional days of restraints leave the Company $333.27 *better off* than if it continued selling. *Id.* ¶¶ 11–12. In other words, under Defendants' own figures and Defendants' own method, the restraints do not deprive Defendants of any earnings; they spare Defendants further operating losses. *Id.* ¶¶ 10, 13.

Since Defendant's only evidence is Ms. Cui's "adoption" of a calculation that, once corrected for a single unsupported input, shows no loss at all, and because there is no danger that Defendant will incur any damages from the injunction, the motion to increase the bond should thus be denied.

## IV. CONCLUSION

"The burden of establishing the bond amount rests with the party to be restrained, who is in the best position to determine the harm it will suffer from a wrongful restraint." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 911 (N.D. Ill. 2015)[5].

A single declaration fraught with contradictions and made by a declarant who cheated the Court's TRO two weeks can neither rebut the "strong presumption of validity" of Plaintiff's registered trademark, nor provide a legitimate loss estimate. The Court should deny the motion to increase bond.

Dated: October 19, 2026

/s/Zheng Liu
Zheng "Andy" Liu (CBN 297327)
**Aptum Law**
1660 S Amphlett Blvd, Suite 315
San Mateo, CA 94402
Tel: (650)475-6289
Email: Andy.Liu@AptumLaw.us
*Attorneys for Plaintiff*

[5] Collecting cases: *In re President Casinos, Inc.*, 360 B.R. 262, 266 (B.A.P. 8th Cir. 2007); *APR Energy, LLC v. First Inv. Grp. Corp.*, No. 3:14-CV-575-J-34JBT, 88 F. Supp. 3d 1300, 2015 U.S. Dist. LEXIS 20524, 2015 WL 736275, at *17 (M.D. Fla. Feb. 20, 2015); *Philips Electronics N. Am. Corp. v. Hope*, 631 F.Supp.2d 705, 724 n. 14 (M.D.N.C.2009); *Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 566 (S.D.N.Y. 2006), *aff'd*, 246 Fed. App'x 73 (2d Cir. 2007).