UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| XUCHANG YINREN TECHNOLOGY CO., LTD., Plaintiff, v. THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", Defendants. | Case No. 1:26-cv-10328 **Honorable Thomas M. Durkin** **Magistrate Judge Laura K. McNally** |

**DECLARATION OF WEI LIANG
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO INCREASE
INJUNCTION BOND**

I, Wei Liang, declare as follows:

1. My name is Wei Liang . I have worked for more than twenty years, since 2002, as an accountant in the wig and hair-products manufacturing and export industry in China, and I have extensive practical experience in the cost accounting of human-hair and synthetic-fiber wig and hair products. I have held a Chinese accounting qualification certificate since 2002. My expertise includes at least the following:

- Cost Accounting: Determining the cost of goods sold, gross margin, and net margin of a trading business from its purchase, inventory, and sales records.
- Financial Statement Preparation and Analysis: Preparing and reviewing income statements, balance sheets, and cash-flow statements.
- Profit and Loss Analysis: Analyzing revenue, cost, expense, and refund data to determine whether a business earned a profit or sustained a loss over a given period.
- E-Commerce Accounting: Accounting for online marketplace sellers, including platform fees, refunds, and freight to fulfillment centers.
- Lost-Earnings Analysis: Estimating the earnings a business would have made over a future period from its actual historical operating results.

2. I was asked to review the estimate of loss submitted by Defendants Weihai Senlian Trading Co., Ltd., doing business as Sunny Beauty (the "Company"), and Union Smulf Inc. in support of their motion to increase the injunction bond (Dkt. 43), and to determine whether Defendants' own records support their claim that the Company will lose $114,496.85 from 30 additional days of restraints. In doing so, I reviewed the Declaration of Cui Yuanyuan (Dkt. 43-1) (the "Cui Declaration"), Exhibit H to the Cui Declaration (Dkt. 43-9), which Ms. Cui describes as "selected columns from our updated sales and expense report for other products," and Exhibit U to the Cui Declaration (Dkt. 43-22), which contains Defendants' loss calculation. All of the figures I rely on below are taken from Defendants' own exhibits, and my calculation can be independently verified from those exhibits.

3. Before performing my calculation, I reviewed each of the twenty-one exhibits (A through U) attached to the Cui Declaration to determine which of them contain data from which the Company's earnings for the August 10 – September 9, 2026 period can be computed. Exhibits A and B (Dkts. 43-2, 43-3) identify the 21 restricted ASINs and show the $1,212,080.72 account balance frozen on October 9, 2026; a frozen balance is not a measure of earnings, and the results of the 21 original products are already carried into Exhibit U as a single $47,967.21 loss. Exhibits C, D, and E (Dkts. 43-4 through 43-6) are the Amazon sales reports, purchase-cost record, and return and refund records for those same 21 products, and I accept the $47,967.21 loss that Defendants derive from them. Exhibits F, G, K, and L (Dkts. 43-7, 43-8, 43-12, 43-13) are purchase orders and invoices, Amazon shipment and tracking records, the record of a single 256-unit shipment, and a freight invoice and shipping bill; they document goods purchased and shipped, not the cost of the goods actually sold during the period, and the $8,957.25 shipping figure derived from them already appears in Exhibit U. Exhibit I (Dkt. 43-10) lists a single per-unit procurement cost for each of the other products, in RMB and in a client-supplied U.S. dollar conversion, but it does not tie those unit costs to the units sold during the period, state a total cost of the goods sold, or show how the $552,716.18 purchase-cost figure in Exhibit U was derived, and Exhibit J (Dkt. 43-11) is a customer return report whose effect is already reflected in Exhibit U's receipts "after Amazon charges and refunds" and its $1,496.82 in unassigned refunds. Exhibits M and

N (Dkts. 43-14, 43-15) are the loan agreement and interest confirmation between Ms. Cui and the Company; their only numerical consequence is the $1,008.46 in interest, which I take from Exhibit U without adjustment. Exhibits O through T (Dkts. 43-16 through 43-21) are Amazon case correspondence, Brand Registry case history, a website maintenance screenshot, and a Seller Support email concerning manufacturer information; none contains any sales, cost, or expense data. Only Exhibit H, the Company's updated sales and expense report for the additional affected products, and Exhibit U, which consolidates every line item of Defendants' own calculation, contain the period receipts, expense, refund, and net-sales-revenue figures needed to compute the Company's earnings. I therefore take every line item in Exhibit U other than the purchase cost exactly as Defendants state it, and the only additional input I draw from Exhibit H is the Company's net sales revenue for the period, to which the industry cost ratio is applied.

**i. Defendants' estimate of loss.**

4. Exhibit U estimates the Company's loss for 30 additional days of restraints by starting from the Company's sales and costs for the 31 days from August 10 through September 9, 2026. Cui Decl. ¶¶ 24–25. It begins with $728,408.80 in receipts from the "additional affected listings" after Amazon charges and refunds; deducts $552,716.18 in purchase costs and $8,957.25 in shipping to Amazon; further deducts a $47,967.21 loss on the original 21 restricted products and $1,496.82 in refunds not assigned to an

individual product; and arrives at "combined earnings for 31 days" of $117,271.34. Exhibit U then converts that figure to 30 days ($117,271.34 ÷ 31 × 30 = $113,488.39), adds $1,008.46 in interest on a loan from Ms. Cui to the Company, and claims a total estimated loss of $114,496.85. Cui Decl. ¶¶ 25–27; Dkt. 43-22 at U-1.

**ii. The purchase-cost figure in Exhibit U is unsupported.**

5. The $552,716.18 purchase-cost deduction is the single largest deduction in Exhibit U and determines the result. Every dollar by which purchase costs are understated becomes a dollar of claimed "earnings," and therefore a dollar of claimed loss. From an accounting standpoint, the purchase cost that must be deducted is the cost of the goods actually sold during the 31-day period (the cost of goods sold), not the cost of goods purchased or held in inventory.

6. Defendants did not provide a breakdown of the purchase cost of the goods sold during the August 10 – September 9, 2026 period, nor a total cost figure for those goods, from which the $552,716.18 could be verified. To the contrary, the summary page of Exhibit H (Dkt. 43-9 at 2) reports the "Cost of goods sold (Seller provided) – Total" (source cell XC3) as $0, and states on its face that "[c]ost of goods sold (seller provided) is zero in this report" and that "[t]hese totals do not establish net profit." Exhibit I lists only a single per-unit procurement cost for each ASIN, in RMB and in a client-supplied U.S. dollar conversion; neither it nor any other exhibit ties those unit costs to the units sold during the period or shows how the $552,716.18 figure was

derived. Because the purchase-cost figure cannot be traced to any record of the cost of the goods sold in the period, the $552,716.18 deduction, and every figure in Exhibit U that depends on it, cannot be relied upon.

**iii. Estimating the cost of goods sold at the industry cost ratio.**

7. Where a seller's actual cost of goods sold cannot be verified from its records, the accepted accounting approach is to estimate the cost of goods sold by applying the cost ratio prevailing in the seller's industry to the seller's sales for the period. Based on my experience, product cost in the hair-extension and wig industry is approximately 60% of the sales amount.

8. According to the summary page of Exhibit H (Dkt. 43-9 at 2, source cell M3, "Sales – Net Sales (Revenue)"), the Company's net sales revenue for the August 10 – September 9, 2026 period were $1,118,956.63. Applying the 60% industry cost ratio to that figure yields an estimated cost of goods sold of $671,373.98 ($1,118,956.63 × 60%). I apply the ratio to net sales revenue rather than to the $728,408.80 in receipts net of Amazon charges and refunds, because the cost of a product is incurred on every unit sold regardless of the fees Amazon later deducts from the sale proceeds; the cost ratio describes the relationship between product cost and the selling price of the goods.

9. Defendants' claimed purchase cost of $552,716.18 amounts to only 49.4% of the Company's $1,118,956.63 in net sales revenue, well below the 60% industry ratio.

Defendants' figure thus understates the cost of goods sold by $118,657.80 ($671,373.98 – $552,716.18), and overstates the Company's earnings by the same amount.

**iv. The Company's earnings recalculated.**

10. I recalculated the Company's earnings for the 31-day period using Defendants' own figures for every line item in Exhibit U, substituting only the estimated cost of goods sold of $671,373.98 for the unsupported $552,716.18 purchase-cost figure. The result is as follows (all amounts in U.S. dollars):

| **31-day period (August 10 – September 9, 2026)** | **Amount** |
|---|---:|
| Receipts from additional affected listings after Amazon charges and refunds (Exhibit U) | $728,408.80 |
| Less: estimated cost of goods sold ($1,118,956.63 net sales revenue per Exhibit H, cell M3 × 60%) | ($671,373.98) |
| Less: shipping to Amazon (Exhibit U) | ($8,957.25) |
| Less: loss on the original 21 products (Exhibit U) | ($47,967.21) |
| Less: refunds not assigned to an individual product (Exhibit U) | ($1,496.82) |
| **Combined earnings (loss) for 31 days** | **($1,386.46)** |

11. Using Defendants' own method of converting the 31-day result to 30 days, the Company's earnings for 30 additional days of restraints are ($1,386.46) ÷ 31 × 30 = ($1,341.73). In other words, under Defendants' own method and Defendants' own figures, corrected only for the cost of goods sold, the Company was operating these listings at a loss of approximately $1,341.73 per 30 days. The restraints therefore do not

deprive the Company of any earnings; they prevent the Company from incurring further operating losses.

12. Exhibit U also adds $1,008.46 in 30 days' interest on the loan Ms. Cui made to the Company. Solely for purposes of this calculation, and without accepting that the loan is a genuine third-party obligation, I include that figure in full. The estimated net result for 30 additional days of restraints is as follows:

| **30 additional days of restraints** | **Amount** |
|---|---|
| Earnings (loss) for 30 days: ($1,386.46) ÷ 31 × 30 | ($1,341.73) |
| Add: 30 days of interest on the loan (Exhibit U) | $1,008.46 |
| **Total estimated loss for 30 additional days** | **($333.27)** |

13. The total is negative. Even after crediting Defendants with the full $1,008.46 in claimed loan interest, 30 additional days of restraints leave the Company $333.27 better off than it would be if it continued selling. Defendants' claimed loss of $114,496.85 exists only because Exhibit U deducts an unsupported purchase-cost figure that is far below the cost of goods sold indicated by the industry cost ratio.

**v. Conclusion.**

14. In sum, based on Defendants' own sales, expense, and refund figures, corrected for the cost of goods sold at the industry ratio, the Company would incur no loss from 30 additional days of restraints. Its estimated net result for that period is a loss of negative $333.27, that is, no loss at all.

I declare, under the laws of the United States, that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment.

Date: October 19, 2026

Wei Liang

Wei Liang