IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| XUCHANG YINREN TECHNOLOGY CO., LTD., | ) | |
| | ) | Case No. 1:26-cv-10328 |
| Plaintiff, | ) | |
| | ) | Honorable Thomas M. Durkin |
| v. | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | ) | |
| | ) | |
| Defendants. | ) | |

**SUNNY BEAUTY AND UNION SMULF INC.'S REPLY IN SUPPORT OF THEIR MOTION TO REQUIRE POSTING OF ADEQUATE SECURITY AND TO LIMIT THE ASSET RESTRAINT**

Plaintiff again filed an opposition after a court-ordered deadline without seeking leave or contacting defense counsel. Its first opposition was due October 7 but filed October 8; this response was due October 19 but filed October 20 at 3:19 a.m. Central time. Dkts. 36, 40, 44, 46. Defendants ask the Court to disregard Dkt. 46 and its attachments, particularly given the Court's warning concerning this bond motion. Oct. 8, 2026 Hr'g Tr. 5:17–22, 6:20–25 (Dkt. 45).

The opposition does not justify continuing the temporary restraining order ("TRO") with only $5,000 in ordered security and an uncapped freeze. The English-name variation concerned an informal translation of the name of Weihai Senlian Trading Co., Ltd. ("Company") in Amazon's manufacturer field.[1] Plaintiff's assumed 60% cost ratio does not displace the Company's recorded

[1] Plaintiff has repeatedly relied on this English-name variation to attack Defendants. Its earlier opposition referred to "Weihai Senlian International Trade Co., Ltd." 17 times. Dkt. 40 at 4, 6–7, 9–11, 13. Plaintiff alleged that Defendants had "doctored these exact sales records to replace the name of a different company with its own name," id. at 2; were "unable to keep a straight story about their true corporate identities," id. at 4; and had "concealed their true corporate entities," id. at 5. Plaintiff even declared: "Nefarious are Defendants' inconsistent assertions." Id.

purchase costs, now reconciled in Exhibit X. The supplemental declaration and Exhibits V–Y clarify the sales channels and document limited website sales, without establishing net replacement earnings. Defendants maintain their request for dissolution and, if any restraint continues, the security and asset protections sought in Dkt. 43.

## I. ARGUMENT

### A. The Court should disregard the second untimely opposition.

Electronic filing was due at midnight in the Court's time zone. Fed. R. Civ. P. 6(a)(4)(A). After that deadline, an extension required a motion and excusable neglect. Fed. R. Civ. P. 6(b)(1)(B). Plaintiff supplied neither a request nor an explanation. Dkt. 46.

The Seventh Circuit affirmed rejection of a one-day-late response after repeated missed deadlines. *Reales v. Consol. Rail Corp.*, 84 F.3d 993, 996–97 (7th Cir. 1996). Plaintiff supplied no excuse, while Defendants' October 21 reply deadline remained unchanged. Dkt. 44.[2] These circumstances support enforcing the deadline.

Defense counsel objected to the earlier late opposition at the October 8 hearing. Hr'g Tr. 3:19–22. The Court emphasized a "timely response" and warned: "If plaintiff doesn't respond to the bond motion, I'm dismissing the case." *Id.* 5:17–22, 6:23–24. Although consideration of the

---

at 5. Plaintiff now repeats the allegation that Defendants "had doctored these exact sales record to replace the name of a different company with its own name." Dkt. 46 at 5. Yet the amended TTAB petition expressly explained that the manufacturer's field contained an "informal English-language rendering" of the same Company's name and "was not a reference to any different or unrelated entity." Dkt. 23-3 at 7, ¶ 12. Plaintiff repeatedly relies on two English renderings of the same Chinese company's legal name to suggest that Defendants misrepresented their corporate identity and altered their historical sales records.

[2] The late filing also caused practical prejudice. Had Plaintiff filed by the October 19 deadline, defense counsel could have consulted with the China-based client during the afternoon of October 20. Instead, Plaintiff filed at 3:19 a.m. Central time, or 4:19 p.m. in China, leaving insufficient time to obtain answers to follow-up questions and additional supporting documents before the close of the business day. Defendants nevertheless remained subject to the October 21 reply deadline.

late response remains discretionary, Defendants request enforcement of the deadline and address the merits without waiving that objection.

**B. The name variation does not eliminate the prior-use dispute.**

Plaintiff again contrasts "Weihai Senlian Trading Co., Ltd." with "Weihai senlian international trade co., ltd." Dkt. 46 at 5–6. The amended TTAB petition already explained that the latter resulted from an informal translation of the Company's name into English in Amazon's manufacturer field, expressly stating that it "was not a reference to any different or unrelated entity." Dkt. 23-3 at 7, ¶ 12. The disclosed correction concerned that field. It was not an admission or evidence that historical order records had been fabricated or another company's sales appropriated.

Cui Yuanyuan identifies the Company, Sunny Beauty storefront, Sunny Hair Beauty account nickname, and unique U.S. merchant token. Dkt. 34-1 ¶¶ 1–2. Amazon's verification and seller records connect the Company's Chinese legal name and registration number to that storefront and account. Dkt. 34-2 at 2–6. Plaintiff's undated manufacturer-field screenshot does not establish a different entity or alteration of historical sales records. Dkt. 46 at 6. Nor does identifying sunnyextensions.com as a sales channel establish that the Company and Union Smulf are the same entity. Dkt. 34 at 1, 4; Dkt. 34-1 ¶ 11.

Defendants rely on continuous use, the 2016 application and specimens, dated public branding, and U.S. sales evidence, not merely a cancellation petition. Dkt. 34 at 2–4, 6–9; Dkt. 34-1 ¶¶ 3–4, 8–10. Registration provides a rebuttable presumption, not immunity from prior-use defenses. 15 U.S.C. § 1115(a). The Court reserved the disputed merits for an evidentiary hearing while inviting a supported bond motion. Hr'g Tr. 2:19–3:17, 5:17–25. Seeking security does not concede infringement.

**C. The operating records support substantial security.**

Rule 65(c) protects against costs and damages if a restraint proves wrongful. Plaintiff invokes the no-danger exception. *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010). But that decision also recognizes protection against possible as well as certain costs. *Id.* at 459. In estimating security, courts should “err on the high side.” *Mead Johnson & Co. v. Abbott Lab'ys*, 201 F.3d 883, 888 (7th Cir. 2000), *opinion amended on denial of reh'g*, 209 F.3d 1032 (7th Cir. 2000). A contested merits defense does not establish an absence of financial risk.

Defendants accept their burden to support the requested amount. *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910–11 (N.D. Ill. 2015), denied an increase without competent evidence of expected pecuniary harm. Here, Cui authenticates records and adopts a calculation deducting Amazon charges, refunds, purchase costs, shipping, and the original 21 products' loss. Dkt. 43-1 ¶¶ 3–27; Dkt. 43-22 at U-1. Security rests on projected operating loss, not the frozen balance.

Plaintiff relies on accountant Wei Liang, offered as an expert, to argue that another 30 days of restraint would cause no lost earnings. Liang replaces the $552,716.18 purchase-cost deduction in the Company's loss summary (Exhibit U) with $671,373.98, calculated as 60% of the $1,118,956.63 in net sales reported in the sales and expense report (Exhibit H). That substitution adds $118,657.80 in assumed costs, turning $117,271.34 in estimated earnings for 31 days into a $1,386.46 loss. Dkt. 46-1 ¶¶ 4–11.

The decisive 60% ratio comes from Liang's generalized industry experience, not Defendants' figures. Dkt. 46 at 10–12; Dkt. 46-1 ¶¶ 7–8. He identifies no study, comparable businesses, or analysis explaining why that ratio fits this Company's product mix and costs.

Expertise alone does not explain how his experience reliably supports that percentage. *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment.[3]

Plaintiff's general manager, Pengfei Xia, bases his "predatory pricing" theory on Liang's disputed loss figure without independently comparing the Company's prices and actual costs. Dkt. 46-2 ¶¶ 16–19. Explaining an assumed loss does not establish it or validate the 60% ratio. Calling the earnings illegitimate also assumes the disputed trademark merits. *Id.* ¶ 20. Rule 65(c) protects against losses from wrongful restraint.

The zero product-cost entry in Exhibit H does not mean Defendants ignored purchase costs. Cui explains that Amazon does not know the Company's purchase costs, which were calculated separately from Exhibit I. Supplemental Declaration of Cui Yuanyuan ("Cui Supp. Decl.") ¶ 14. Exhibit X reconciles the $552,716.18 deducted in Exhibit U by multiplying Exhibit H quantities by corresponding Exhibit I unit costs. Cui reviewed and adopted that calculation. *Id.* ¶ 15 & Ex. X at X-1, X-59; Dkt. 43-22 at U-1.

Exhibit X contains 2,294 product rows and 19,617 units sold. For example, 168 units of ASIN B08B5YQVCY at $37.74238802 each yield $6,340.7212 in purchase costs. Ex. X at X-1–X-2. Even charging costs for every product in Exhibit H, $607,113.43, against only the $728,408.80 in additional-listing receipts, while retaining U's shipping, original-product loss, and

---

[3] Defendants also object to Liang's submission under 28 U.S.C. § 1746. His attestation invokes United States law and warns that willful false statements are punishable by fine or imprisonment, but does not expressly certify the contents under penalty of perjury. Dkt. 46-1 at 9. *See DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*, 920 F.2d 457, 471 (7th Cir. 1990); *Bloodstock Rsch. Info. Servs., Inc. v. Edbain.com, LLC*, 622 F. Supp. 2d 504, 511 (E.D. Ky. 2009) (rejecting a similar false-statement certification). Even if the Court finds substantial compliance or permits cure, a corrected certification would not establish the missing factual basis for Liang's 60% cost assumption.

unassigned-refund deductions, leaves $62,874.09 for 31 days, or $60,845.89 for 30 days before interest. Dkt. 43-9 at 3–81; Dkt. 43-10 at 2–82; Dkt. 43-22 at U-1.

Cui's adopted estimate remains $113,488.39 in lost earnings plus $1,008.46 in interest for another 30 days. Dkt. 43-1 ¶¶ 24–27. The higher-cost alternative confirms substantial earnings without replacing that estimate or validating Plaintiff's 60% assumption.

Plaintiff's demand for academic or professional damages credentials overreads *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418–20 (7th Cir. 2005). It rejected unsupported growth projections, not managers' testimony about underlying business facts. *Id.* at 420. Rule 701 recognizes particularized business knowledge. Fed. R. Evid. 701 advisory committee's note to 2000 amendment. Cui identifies her records, deductions, 31-day baseline, and restocking assumption for the 30-day estimate. Dkt. 43-1 ¶¶ 24–27.

The loan is a separate component supported by the identified obligation and its terms. Dkt. 43-1 ¶¶ 15–16, 26; Dkts. 43-14, 43-15. Ownership alone does not show that obligation is fictitious. Excluding all $1,008.46 of interest leaves $113,488.39 in estimated earnings and more than $60,000 under the higher-cost alternative.

**D. The other channels do not establish replacement earnings.**

Defendants claim no categorical exemption for TikTok or unlisted websites. The TRO restricts use of the challenged mark in advertising, offering, and selling the described products and separately governs domain and platform implementation. Dkt. 20 at 3–8, ¶¶ 1, 4–7. Plaintiff described additional ASINs as enabling implementation without broader relief. Dkt. 26 at 4. The order's terms and Rule 65(d)(2) govern; it does not prohibit every sale by unrelated sellers.

Xia asserts that Defendants created additional ASINs after the TRO and opened three TikTok shops and two websites. Dkt. 46-2 ¶¶ 9–10. He does not reconcile his reference to 21

additional ASINs with Plaintiff's amendment motion, which identified twelve new ASINs corresponding to the 21 originally restrained listings. Dkt. 46-2 ¶ 10; Dkt. 26 at 1–2, 4–5. Multiple links do not establish multiple shops. Cui identifies one Company-operated TikTok shop, renamed Ve Sunny. Holleton Inc. operates sunnyhairpro.com for the business; the site existed before the TRO and changed its branding after sunnyextensions.com closed. Cui and the Company disclaim ownership or operation of sunnyhairtop.com, which the Company did not authorize. Cui Supp. Decl. ¶¶ 2–9.

Exhibit V reports that sunnyhairpro.com was registered June 19, 2025, before this litigation. Cui Supp. Decl. ¶¶ 10–11 & Ex. V at 3. Exhibit W identifies EU Technology (HK) Limited as registrar and redacts the registrant's name and organization. *Id.* ¶¶ 12–13 & Ex. W at 3–4. Cui's nonownership and nonauthorization testimony rests on her business knowledge and records review, not an inference from that lookup. *Id.* ¶¶ 2, 8–9.

Xia's two October 11 TikTok purchases, packaging, and matching business addresses connect TikTok to the Company. Dkt. 46-2 ¶¶ 11–13; Dkt. 46-4 at 2–7.[4] Cui acknowledges continued TikTok operations and some SUNNY HAIR packaging, but cannot identify the packaging or packing dates of those particular orders. Cui Supp. Decl. ¶¶ 4–5. This does not establish three shops or ownership of sunnyhairtop.com. Xia attributes sales to both websites but describes purchases only from TikTok. Dkt. 46-2 ¶¶ 11, 14–15.

Cui states that Exhibit Y shows all sunnyhairpro.com sales from April 1 through September 30, 2026. Cui Supp. Decl. ¶ 7. It lists 18 paid, fulfilled orders totaling $6,071.68, plus one refunded order at $0.00. Only three listed orders postdate September 9, totaling $1,247.44. Ex. Y at 2. These

[4] Xia's declaration identifies the product photographs as Exhibit A and the website captures as Exhibit B. Dkt. 46-2 ¶¶ 13–14. As filed, Exhibit A contains the website captures, and Exhibit B contains the product photographs and purchase records. Dkts. 46-3, 46-4.

are order totals, not net profits. Five products in Plaintiff's sunnyhairpro.com capture are marked "Sold out." Dkt. 46-3 at 6. Any mitigation adjustment must reflect actual replacement earnings and expenses for the relevant period. Neither continued sales nor alleged noncompliance establishes that all projected Amazon earnings were replaced or resolves the prior-use dispute.

**E. Any continued restraint requires a supported limit and adequate security.**

The asset restraint must serve a supported equitable recovery. *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002). Defendants seeking an exemption must provide documentary support, but the restraint is limited to what is reasonably necessary for equitable relief. *Roadget Bus. Pte. Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, 735 F. Supp. 3d 981, 983–85 (N.D. Ill. 2024). The court reduced a freeze using supported accused-product revenues even though cost deductions remained disputed. Defendants seek that focused determination here, not an exemption based solely on the existence of different sales channels.

Plaintiff supplies no dollar limit or calculation showing that every restrained dollar is needed. Defendants request an interim $1,212,080.72 ceiling, the balance documented October 9, release of excess held solely because of this case, and expedited determination of a supported lower ceiling. Dkt. 43-1 ¶ 4; Dkt. 43 at 8–10.

Plaintiff says its original bond payment was returned for insufficient postage and re-mailed. Dkt. 46 at 4 n.3. The original TRO required the $5,000 deposit within seven calendar days of its September 9 entry. Dkt. 20 at 8–9, ¶¶ 10, 12. Mailing does not establish actual posting or answer the need for increased security. If restraint continues, Defendants request $150,000 in total security by 5:00 p.m. Central time on the second business day after entry, proof of posting, review as losses continue, and no discharge without further order. Dkt. 43 at 6–7, 10.

## CONCLUSION

Defendants request that the Court disregard Dkt. 46 and dissolve the restraints as to Sunny Beauty and Union Smulf Inc. based on the repeated procedural failures and inadequate security. Fed. R. Civ. P. 65(b)(4); Dkt. 20 ¶ 11. They preserve Dkt. 34's merits grounds for the evidentiary hearing. Alternatively, the Court should grant the requested security and asset relief and dissolve the restraints promptly if security is not posted. Any posted bond should remain until further order.

Upon dissolution, Plaintiff should notify enforcement recipients within 24 hours, provide the order, withdraw implementation requests, and request release of affected funds and restoration of listings, copying defense counsel. *See Bestway Inflatables & Material Corp. v. Holon Supplier*, No. 23 C 2286, 2023 WL 7386062, at *2 (N.D. Ill. Nov. 8, 2023) (recognizing a plaintiff's responsibility to remedy continuing effects of a dissolved TRO). These directions concern this case's restraints. Defendants preserve their defenses, Union Smulf's counterclaims, and claims arising from the restraints.

Dated: October 21, 2026
Respectfully submitted,

/s/ Benjamin Solter
Benjamin Solter (CA Bar No. 269388)
Cross-Border Counselor LLP
7755 Center Ave., Suite 1100
Huntington Beach, CA 92647
Direct: (781) 752-6369
bsolter@cbcounselor.com

*Counsel for Weihai Senlian Trading Co., Ltd.,*
*doing business as Sunny Beauty, and Union Smulf Inc.*