**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

XUCHANG YINREN TECHNOLOGY CO., LTD.,

Plaintiff,

v.

THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

Defendants.

Case No.: 1:26-cv-10328

**Judge Thomas M. Durkin**

**Magistrate Judge Laura K. McNally**

**PLAINTIFF'S MOTION FOR EVIDENTIARY HEARING REGARDING THE DECLARATION AND SUPPLEMENTAL DECLARATION OF CUI YUANYUAN IN SUPPORT OF DEFENDANTS' MOTION TO REQUIRE POSTING OF ADEQUATE SECURITY AND TO LIMIT THE ASSET RESTRAINT**

Plaintiff Xuchang Yinren Technology Co., Ltd. ("Plaintiff") moves for an evidentiary hearing on the Motion to Require Posting of Adequate Security and to Limit the Asset Restraint (Dkt. 43) filed by Weihai Senlian Trading Co., Ltd., doing business as Sunny Beauty ("Defendant Sunny Beauty"), and Union Smulf Inc. ("Defendant Union Smulf") (together, "Defendants"). In support, Plaintiff states:

## I. INTRODUCTION

"It is well established that, in general, a motion for a preliminary injunction should not be resolved on the basis of affidavits alone. Normally, an evidentiary hearing is required to decide credibility issues." *Medeco Sec. Locks, Inc. v. Swiderek*, 680 F.2d 37, 38 (7th Cir. 1981) (*per curiam*).

Here, Defendants ask the Court to raise Plaintiff's security thirtyfold, from $5,000 to $150,000, on the word of a single declarant, Ms. Yuanyuan Cui. (Dkt. 43 at 1.) But Ms. Cui's two declarations are contradicted by her own words, by Defendants' own exhibits, and by public records:

| ***Ms. Cui's sworn statements*** | ***Ms. Cui's own words, Defendants' exhibits, and public records*** |
|---|---|
| "Before August 27, 2024, the shareholders of the Company were Du Tao and me." (Cui Supp. Decl. ¶ 1.) | From June 5 through October 18, 2015, Han Zhonghua held 90% of Defendant Sunny Beauty, and Ms. Cui held 10%. (**Xia Decl. ¶ 3, Ex. A** at 34 (*National Enterprise Credit Information Publicity System* report for Weihai Senlian Trading Co., Ltd.).) |
| "The restrictions prevent sales of affected products . . . ." (Cui Decl. ¶ 28.) | "Some products currently sold through the shop under the Ve Sunny name still have SUNNY HAIR packaging." (Cui Supp. Decl. ¶ 5.) |

| *Ms. Cui's sworn statements* | *Ms. Cui's own words, Defendants' exhibits, and public records* |
|---|---|
| Exhibit X "accurately reflects the Company's purchase costs." (Cui Supp. Decl. ¶ 15.) | Exhibit X costs 342 units of ASIN B07M88M96X as an 80-gram SKU that Plaintiff has not located in any of Defendants' purchase orders. (Dkt. 47-4 at 3; Dkt. 43-10 at 2; Dkt. 43-7.) |
| Exhibit S "is a true copy of the Sunny Hair and VeSunny website maintenance screenshot . . . ." (Cui Decl. ¶ 21.) | sunnyextensions.com "was closed in connection with the TRO." (Cui Supp. Decl. ¶ 6.) The site displayed a standard Shopify error page, not a maintenance page. (**Xia Decl. ¶ 4, Ex. B**.) |
| Exhibit T "confirm[s] updates to identify the Company as the manufacturer of five listed ASINs." (Cui Decl. ¶ 22.) | Defendants' invoices identify the seller of their hair products as Juancheng Qianxi Hair Products Co., Ltd. (Dkt. 43-7 at 2.) |

Further, the record on which Defendants rely is also one-sided. On September 9, 2026, the Court entered a Temporary Restraining Order and set a $5,000 bond. (Dkt. 20 ¶ 10.) On October 15, 2026, Defendants filed a motion to require $150,000 in security, supported by the Declaration of Cui Yuanyuan ("Cui Decl."). (Dkts. 43, 43-1.) Plaintiff opposed (Dkt. 46), and Defendants replied (Dkt. 47). Defendants' reply was accompanied by a supplemental declaration from Ms. Cui ("Cui Supp. Decl.") and four new exhibits, including a 59-page purchase-cost calculation offered for the first time on reply (Exhibit X). (Dkts. 47-1 to 47-5.) Plaintiff had no opportunity to respond to that

evidence, let alone to cross-examine Ms. Cui. The Court has continued the temporary restraining order pending an evidentiary hearing on Defendants' motion to dissolve it (Dkt. 34). (Dkt. 42.)

In sum, a single declaration fraught with contradictions cannot carry a thirtyfold increase in security. Given that Defendants' security request rests on a largely one-sided record, a focused evidentiary hearing is now warranted. The Court should hold that hearing together with the evidentiary hearing on Defendants' motion to dissolve the TRO.

## II. LEGAL STANDARD

An evidentiary hearing is required when the non-movant's response raises genuine issues of material fact that could affect the injunction decision. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 814 (7th Cir. 2002) (citing *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997); *Medeco Sec. Locks, Inc. v. Swiderek*, 680 F.2d 37, 38 (7th Cir. 1981) (*per curiam*)); *Elliott v. Kiesewetter*, 98 F.3d 47, 53 (3d Cir. 1996); *Schulz v. Williams*, 38 F.3d 657 (2d Cir. 1994) (*per curiam*).

The amount of security under Rule 65(c) is part of that decision. Defendants ask the Court to fix it based on a single declarant's sworn estimate, and their own authority recognizes that the Court must explain the amount it selects. (Dkt. 43 at 1, 3–6.)

## III. DISCUSSION

Each of the disputed facts below bears on the amount of security, and each depends on the sworn account of Ms. Cui, whom Plaintiff has had no opportunity to cross-examine.

### A. Defendants' Purchase-Cost Figure, the Largest Input in Their Loss Estimate, Is Disputed and Cannot Be Traced to Their Purchase Records.

Defendants' $150,000 request rests on Exhibit U, and the largest input in Exhibit U is $552,716.18 in purchase costs. Defendants' claimed $114,496.85 loss depends on deducting $552,716.18 in purchase costs from $728,408.80 in receipts. (Dkt. 43 at 5; Cui Decl. ¶¶ 24–27, Ex. U.) Because Exhibit U subtracts purchase costs from receipts, every dollar by which those costs are understated becomes a dollar of claimed loss. Here, Defendants' own records raise several questions about that figure.

First, Defendants did not show how they derived the $552,716.18 figure until their reply. Ms. Cui now states that "Exhibit X calculates the purchase costs of the affected products by multiplying the quantities sold in Exhibit H by the corresponding unit purchase costs in Exhibit I." (Cui Supp. Decl. ¶ 15.) But neither Exhibit I nor Exhibit X identifies the purchase order or invoice from which any unit cost was taken. (Dkt. 43-10; Dkt. 47-4.)

Second, Defendants' purchase orders do not fill that gap. For example, Exhibit X assigns 342 units of ASIN B07M88M96X a unit cost of $26.38756088, for a total of $9,024.55. (Dkt. 47-4 at 3.) Exhibit I maps that ASIN to SKU FP_P16-22_18_80G4, at RMB

176.6225 per unit. (Dkt. 43-10 at 2.) Plaintiff has not located that SKU in any of the purchase orders in Exhibit F. (Dkt. 43-7 at 3–4, 8–12.) The same is true of other large entries in Exhibit X, including at least the following:

- ASIN B08B5YQVCY (SKU HW_1_22__100G4; 168 units; $6,340.72);
- ASIN B0FWCKLP9Z (SKU TP_1_28_100G3; 50 units; $3,535.87);
- ASIN B08ZMWWWJR (SKU CP_1_24_105G4; 67 units; $3,086.57); and
- ASIN B07N7GYY7S (SKU FP_4-4-27_18_80G4; 126 units; $3,057.71).

(Dkt. 47-4 at 3, 19; Dkt. 43-10 at 2, 22.) In all, of the 45 largest entries in Exhibit X, totaling $103,904.24, 19 entries totaling $51,845.03 use SKUs that cannot be located in Exhibit F.

Third, Defendants have produced no record of what they actually paid for any product. Exhibit F contains one supplier's purchase orders and invoices, showing what Defendant Sunny Beauty was billed, but no payment records. (Cui Decl. ¶ 8; Dkt. 43-7.) By contrast, Defendants produced "bank receipts" for Ms. Cui's loan to Defendant Sunny Beauty, which Ms. Cui says "was needed to pay suppliers." (Cui Decl. ¶¶ 15, 26.) Nor does Ms. Cui state that Exhibit F reflects all of Defendant Sunny Beauty's purchases, or that its supplier, Juancheng Qianxi Hair Products Co., Ltd., is its only source of goods. (*See id.* ¶ 8.) And where Defendants bought the same SKU more than once at different prices, Exhibit I lists a single unit cost without saying which purchase

it reflects. For example, Defendants bought SKU CP_2-2-6_18_105G4 at ¥198.74 and at ¥197.51, but Exhibit I lists ¥198.7352. (Dkt. 43-7 at 3, 10; Dkt. 43-10 at 2.)

In sum, Defendants' own records do not support the $552,716.18 figure. For many of the products in Exhibit X, Defendants have produced no purchase order, and for none have they produced proof of payment. If Defendant Sunny Beauty's actual purchase costs were higher than Exhibit I states, for example because of purchase records or suppliers not before the Court, then Exhibit U overstates its earnings, and its claimed loss, by the same amount. Live testimony is thus needed to determine how Exhibit I's unit costs were derived, whether they correspond to the products actually sold, and what Defendant Sunny Beauty's cost of goods sold actually was for the August 10 – September 9, 2026 period.

### B. Ms. Cui Admits That SUNNY HAIR Products Are Still Being Sold Through Defendants' TikTok Shop and Website, Sales the Loss Estimate Ignores.

Defendants' estimate assumes that the restraints "prevent sales of affected products." (Cui Decl. ¶ 28.) Ms. Cui's first declaration also states that Defendant Sunny Beauty suspended additional SUNNY HAIR listings on Amazon after the September 24, 2026 hearing. (*Id.* ¶ 23.) Her supplemental declaration, however, tells a different story about Defendants' other sales channels.

First, the TikTok shop operated by Defendant Sunny Beauty "previously operated under the Sunny Hair name," changed its display name to Ve Sunny "[a]fter

complaints were made to TikTok," and "continued operating under that name." (Cui Supp. Decl. ¶¶ 3–4.) "Some products currently sold through the shop under the Ve Sunny name still have SUNNY HAIR packaging," and Ms. Cui "cannot identify" whether the packaging used for Plaintiff's two test orders was pre-TRO inventory. (*Id.* ¶ 5.)

Second, sunnyhairpro.com, which "is operated for our business by Holleton Inc.," took orders through at least September 23, 2026, including three orders placed after the Court entered the TRO. (*Id.* ¶¶ 6–7, Ex. Y (Dkt. 47-5 at 2).) Defendant Sunny Beauty is "replacing packaging boxes with Ve Sunny-branded boxes," and "[t]hat work is ongoing." (*Id.* ¶ 7.)

Third, Defendants' loss estimate addresses only the Amazon storefront. (Dkt. 43-22.) It does not disclose the TikTok shop's sales or account for sales made through TikTok or sunnyhairpro.com while the Amazon listings were restrained. Earnings from those sales offset the earnings Defendants say they will lose.

In sum, Defendants cannot have it both ways. They seek security on the premise that the restraints "prevent sales," while Ms. Cui admits that SUNNY HAIR-packaged goods are still reaching consumers. The volume of those sales, and the products and packaging used, are facts within Defendants' control that require testimony and records. Ms. Cui's admissions also raise a question whether Defendants have complied

with the TRO's prohibition on unauthorized use of the asserted mark. (*See* Dkt. 20 ¶ 1(a).)

### C. Ms. Cui's Account of Defendant Sunny Beauty's Ownership Omits Its Founding Majority Shareholder, Who Is Linked to Defendant Union Smulf Inc. and to Holleton Inc.

Ms. Cui states that she has "worked for the Company since June 2015" and that, "[b]efore August 27, 2024, the shareholders of the Company were Du Tao and me." (Cui Supp. Decl. ¶ 1.) Not so. From June 5 through October 18, 2015, Han Zhonghua held 90% of Defendant Sunny Beauty and Ms. Cui held 10%. From October 19, 2015 through August 26, 2024, Ms. Cui held 30% and Du Tao held 70%. Ms. Cui has held 100% since August 27, 2024. (Xia Decl. ¶ 3, Ex. A at 4–5, 34.)

Han Zhonghua is the actual controller of Defendant Union Smulf, Ms. Cui's co-movant here, and of Holleton Inc., which operates sunnyhairpro.com "for our business." (Xia Decl. ¶ 3, Ex. A; Dkt. 43 at 1; Cui Supp. Decl. ¶ 6.)

In sum, these relationships bear on the amount of security. Defendants request "[o]ne bond" to "protect both Defendants" (Dkt. 43 at 6), yet neither of Ms. Cui's declarations mentions Union Smulf, describes its role, or identifies any loss it claims. If Defendant Sunny Beauty, Defendant Union Smulf, and Holleton operate under common control, sales lost on Amazon may be recaptured through affiliated channels, including sunnyhairpro.com. The Court should hear from Ms. Cui on these relationships before fixing security.

### D. Ms. Cui's Denial Concerning sunnyhairtop.com Is Limited to Defendant Sunny Beauty and Does Not Identify the Operator.

Ms. Cui states that she does "not own or operate sunnyhairtop.com," that "[t]he Company does not own, operate, or authorize that website," and that she does "not know who owns or operates that website." (Cui Supp. Decl. ¶ 8.) She acknowledges that she has "not determined who owns or operates sunnyhairtop.com." (*Id.* ¶ 9.)

But her denial is limited to Defendant Sunny Beauty. It does not address whether Union Smulf, Holleton, Han Zhonghua, or any other affiliate operates the site. The domain was created on September 7, 2026, two days before the Court entered the TRO, and its registrant's name and organization are redacted. (*Id.* ¶ 12; Dkt. 47-3 at 3.)

Yet sunnyhairtop.com sells SUNNY HAIR products that it attributes to Defendant Sunny Beauty. On October 22, 2026, the site offered "Sunny Hair Wire Hair Extensions" during a "clearance event" and listed the product's "Manufacturer" as "Weihai Senlian Trading Co., Ltd." (**Xia Decl. ¶ 5, Ex. C** at 3–4.) The product description also reproduces fields from an Amazon product page, including a "Best Sellers Rank" of "#56 in Hair Extensions" and a count of "(4,035)" customer reviews, and the storefront was built on Shopify. (*Id.* at 4, 6.) Ms. Cui swears that Defendant Sunny Beauty does not "own, operate, or authorize" this website (Cui Supp. Decl. ¶ 8), but she does not explain how a website it has not authorized came to sell products that name Defendant Sunny Beauty as their manufacturer, or where those products come from.

In sum, whether sunnyhairtop.com is operated by or for Defendants or their affiliates bears directly on whether sales lost on Amazon are being made elsewhere. Testimony is needed, and if Defendants cannot identify the operator, third-party discovery from Shopify and the domain registrar may be necessary.

### E. Ms. Cui's Declarations Describe Defendants' Website Differently, and the Authenticity of Exhibit S Is Disputed.

Ms. Cui attested that Exhibit S "is a true copy of the Sunny Hair and VeSunny website maintenance screenshot, which states that the online store is temporarily unavailable." (Cui Decl. ¶ 21.) Exhibit S shows a stylized "We're upgrading our website" page bearing both the SUNNY HAIR and VeSunny marks. (Dkt. 43-20.) It shows no URL, no date, and no indication of where or when it was captured. (*Id.*) Ms. Cui's supplemental declaration states instead that sunnyextensions.com "was closed in connection with the TRO." (Cui Supp. Decl. ¶ 6.)

When Plaintiff visited sunnyextensions.com on October 22, 2026, the site displayed no maintenance page. It displayed a standard Shopify error page stating that the store is unavailable. (Xia Decl. ¶ 4, Ex. B.)

In sum, which page the website actually displayed, when, and who created Exhibit S bear on the reliability of Ms. Cui's attestation that Exhibit S is a "true copy," and therefore on the weight to be given her loss estimate.

### F. Defendants Represented to Amazon That Defendant Sunny Beauty Is the Manufacturer of Its Products, but Their Own Purchase Records Show a Third-Party Manufacturer.

Ms. Cui's first declaration offers Amazon correspondence "confirming updates to the manufacturer information for our products to identify the Company" and "confirming updates to identify the Company as the manufacturer of five listed ASINs." (Cui Decl. ¶¶ 17, 22, Exs. O, T.) One of those emails responds to Defendant Sunny Beauty's "request to change the manufacturer to Weihai Senlian Trading Co., Ltd." (Dkt. 43-21 at 2.)

But the invoices in Exhibit F identify the seller of Defendant Sunny Beauty's hair products as Juancheng Qianxi Hair Products Co., Ltd., and the purchase-order ledgers bear what appears to be that supplier's seal. (Dkt. 43-7 at 2–12.)

In sum, whether Defendant Sunny Beauty manufactures any of the products at issue, and why it asked Amazon to list itself as the manufacturer, bears on the credibility of the declarant on whom Defendants' entire security request rests.

### G. The Hearing Can Be Focused and Efficient.

Plaintiff will present testimony by Zoom of Mr. Wei Liang, an accountant who has worked in the wig and hair-products manufacturing and export industry in China since 2002 and has held a Chinese accounting qualification certificate since that year. Mr. Liang has served as an accountant for several hair-products companies, including Plaintiff, and routinely reviews the sales, purchase, and inventory records of hair-

products businesses to determine product cost, cost of goods sold, and earnings. Mr. Liang will testify on the cost of goods sold for the August 10 – September 9, 2026 period and on the reliability of Exhibits H, I, U, and X. Plaintiff will also present Mr. Pengfei Xia, General Manager of Plaintiff, regarding Plaintiff's test purchases, the TikTok shop, and the website captures described above. Plaintiff requests that Ms. Cui appear by Zoom for examination.

## IV. CONCLUSION

"Normally, an evidentiary hearing is required to decide credibility issues." *Medeco*, 680 F.2d at 38.

A single declaration fraught with contradictions cannot carry a thirtyfold increase in security. Plaintiff respectfully requests that this Honorable Court conduct a focused evidentiary hearing before ruling on Defendants' Motion to Require Posting of Adequate Security and to Limit the Asset Restraint (Dkt. 43); and hold that hearing together with the evidentiary hearing on Defendants' motion to dissolve the temporary

restraining order (Dkts. 34, 42), so the Court may resolve disputed factual issues bearing on the amount of security.

Dated: October 22, 2026

/s/Zheng Liu
Zheng "Andy" Liu (CBN 279327)
**Aptum Law**
1660 S Amphlett Blvd, Suite 315
San Mateo, CA 94402
Tel: (650)475-6289
Email: Andy.Liu@AptumLaw.us
*Attorneys for Plaintiff*