**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| XUCHANG YINREN TECHNOLOGY CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | Case No. 1:26-cv-10328<br><br>Judge Thomas M. Durkin<br><br>Magistrate Judge Laura K. McNally |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE THE PRIORITY DECLARATION IN COUNTERCLAIM I AND THE THIRD AFFIRMATIVE DEFENSE

## INTRODUCTION

Plaintiff asks the Court to strike two narrow items from Defendants' Answer, Affirmative and Other Defenses, and Counterclaims (Dkt. 35). The first is the request in Counterclaim I for a freestanding declaration of priority, together with conforming references to priority elsewhere in the pleading. The second is Defendants' Third Affirmative Defense, which restates Defendants' denials. Striking them costs Defendants no issue, defense, or available relief.

Counterclaim I asks the Court to declare that Defendant Weihai Senlian Trading Co., Ltd., doing business as Sunny Beauty ("Sunny Beauty"), has "priority over Xuchang within the scope of Sunny Beauty's established prior rights." Dkt. 35, Countercl. ¶ 29. In substance, that asks the Court to declare that Sunny Beauty has priority wherever it proves priority. Whether Sunny Beauty used SUNNY HAIR before Plaintiff Xuchang Yinren Technology Co., Ltd. ("Xuchang"),

and where, is already before the Court without that declaration. Sunny Beauty pleads its prior use as its First Affirmative Defense under 15 U.S.C. § 1115(b)(5). It makes the same prior use the foundation of its own Counterclaim II, which seeks cancellation of Xuchang's registration, and Counterclaim III, which seeks damages and an injunction for infringement of Sunny Beauty's claimed common-law rights. And the relief Counterclaim I requests, including the noninfringement declaration this motion leaves in place, is sought "to the extent of the prior rights and statutory defense established by the evidence." Dkt. 35, Countercl. ¶ 29.

The priority declaration adds a label, not an issue, and it should be stricken. *See Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985); *Bao v. MemberSelect Ins. Co.*, No. 21 C 04119, 2022 WL 1211509 (N.D. Ill. Apr. 25, 2022), Dkt. 26 at 11–14. Xuchang does not ask the Court to strike Counterclaim I's separate declarations of noninfringement and no counterfeiting. This Court allowed Schedule A defendants to maintain duplicative counterclaims in *Square One Ent. Inc. v. Partnerships & Unincorporated Ass'ns Identified in Schedule "A"*, No. 20 C 5685, 2021 WL 1253450 (N.D. Ill. Apr. 5, 2021), Dkt. 104, and this motion is consistent with that decision. It leaves in place the kind of noninfringement and no-counterfeiting declarations that *Square One* allowed. And Sunny Beauty's own Counterclaims II and III, which can remain pending for independent adjudication whatever becomes of Xuchang's claims, ensure a merits decision on priority without Xuchang's consent. *See* Fed. R. Civ. P. 41(a)(2); *infra* Part II.

Separately, Defendants' Third Affirmative Defense, "Limitations on Monetary Relief," is not an affirmative defense at all. It restates Defendants' denials, and because Defendants concede that it "does not shift Plaintiff's burden of proof," Dkt. 35 at 23, whether it is an affirmative defense can be decided now, without facts or discovery. It should be stricken. *See infra* Part V.

## BACKGROUND

Xuchang owns United States Trademark Registration No. 8,311,515 for SUNNY HAIR, registered on the Principal Register on June 23, 2026, for hair extensions, wigs, false hair, hair pieces, hair weaves, and human braiding hair. Dkt. 1 ¶ 5; Dkt. 1-1 at 2. It asserts claims for trademark infringement and counterfeiting under 15 U.S.C. § 1114 (Count I) and false designation of origin under 15 U.S.C. § 1125(a) (Count II) against Sunny Beauty and Union Smulf Inc. ("Union Smulf") (together, "Defendants"). Dkt. 1 ¶¶ 26–37.

Defendants answered and asserted three defenses and three counterclaims. Dkt. 35. Defendants' First Affirmative Defense, captioned "Priority and Senior Trademark Rights," alleges that Sunny Beauty has used SUNNY HAIR since 2016 and "invokes the independent continuous-prior-use defense under 15 U.S.C. § 1115(b)(5), available against a contestable registration through § 1115(a), together with the preservation of earlier rights under § 1057(c)." *Id.* at 22.

Sunny Beauty alone asserts the counterclaims based on ownership and priority: "The claims of trademark ownership and priority, cancellation, and affirmative commercial infringement are asserted by Sunny Beauty, not by Union Smulf." *Id.* at 24. Counterclaim II seeks cancellation of Xuchang's registration under 15 U.S.C. §§ 1052(d), 1064(1), and 1119, principally because "[b]efore Xuchang's asserted first use or application date, Sunny Beauty had acquired protectable rights in SUNNY HAIR through its actual use in United States commerce." *Id.*, Countercl. ¶ 32. (It also alleges, in the alternative, likelihood of confusion with Sunny Beauty's VE SUNNY registration. *Id.*, Countercl. ¶ 33.) Counterclaim III alleges that Sunny Beauty "owns

prior, protectable common-law rights in SUNNY HAIR" and that Xuchang's "later" use infringes them. *Id.*, Countercl. ¶ 36.

Counterclaim I, captioned "Declaratory Judgment of Noninfringement and Priority," requests two kinds of declarations. Both Defendants seek a declaration that the challenged use of SUNNY HAIR "does not infringe or counterfeit rights enforceable by Xuchang against either Defendant." *Id.*, Countercl. ¶ 29. Sunny Beauty separately seeks a priority declaration: "Sunny Beauty requests a judgment declaring its priority over Xuchang within the scope of Sunny Beauty's established prior rights." *Id.*; *see id.* at 35 (Prayer ¶ B). The question that declaration would answer is already presented in five other places in the same pleading:

| **Where priority is already at issue** | **What Dkt. 35 says** |
|---|---|
| First Affirmative Defense (Dkt. 35 at 22) | "Sunny Beauty invokes the independent continuous-prior-use defense under 15 U.S.C. § 1115(b)(5), available against a contestable registration through § 1115(a), together with the preservation of earlier rights under § 1057(c)." |
| Counterclaim I, ¶ 27 (Dkt. 35 at 31) | "Independently of cancellation, Sunny Beauty invokes 15 U.S.C. §§ 1057(c), 1115(a), and 1115(b)(5) . . . . This defense applies in the areas in which Sunny Beauty proves qualifying continuous prior use." |

| | |
|---|---|
| Counterclaim II, ¶ 32 (Dkt. 35 at 32) | "Before Xuchang's asserted first use or application date, Sunny Beauty had acquired protectable rights in SUNNY HAIR through its actual use in United States commerce and had not abandoned those rights." |
| Counterclaim III, ¶ 36 (Dkt. 35 at 33) | "Sunny Beauty owns prior, protectable common-law rights in SUNNY HAIR for hair extensions in the United States markets in which it established those rights." |
| Counterclaim I, ¶ 29 (last sentence), and Prayer ¶ B (Dkt. 35 at 32, 35) | "This relief is requested whether or not Registration No. 8,311,515 is cancelled, to the extent of the prior rights and statutory defense established by the evidence." Prayer ¶ B seeks Counterclaim I's declarations "including protection for qualifying prior use even if the registration remains in force." |

**LEGAL STANDARD**

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Courts in the Seventh Circuit typically dispose of redundant counterclaims via Rule 12(f)." *Bao*, No. 21 C 04119, Dkt. 26 at 11. Motions to strike are generally disfavored because they "potentially serve only to delay," but "where . . . motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

The Seventh Circuit has identified two approaches for determining whether a defense not enumerated in Rule 8(c) is an affirmative defense: whether "the defendant bears the burden of proof" and whether the defense does "not controvert the plaintiff's proof." *Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 872 (7th Cir. 2012) (quoting *Brunswick Leasing Corp. v. Wis. Cent., Ltd.*, 136 F.3d 521, 530 (7th Cir. 1998)).

The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Act confers on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). It is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).

## ARGUMENT

### I. The Priority Declaration Is Redundant: It Restates Sunny Beauty's First Affirmative Defense, and Priority Is Already at Issue in Counterclaims II and III.

"The label 'counterclaim' has no magic. What is really an answer or defense to a suit does not become an independent piece of litigation because of its label." *Tenneco*, 776 F.2d at 1379. Applying that principle, this Court struck a declaratory counterclaim whose grounds "track directly with [the defendant's] second and third affirmative defenses," because the defendant "ha[d] simply restated the allegations and arguments found in its answer and tried to construct an independent claim from them." *Bao*, No. 21 C 04119, Dkt. 26 at 12. Declaratory judgments are "not intended to allow parties to convert claims and affirmative defenses into redundant counterclaims." *Id.* (quoting *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1067 (N.D. Ill. 2013), *aff'd on other grounds*, 791 F.3d 729 (7th Cir. 2015)). Thus, "courts routinely dismiss

counterclaims that seek to generate an independent piece of litigation out of issues that are already before the court; this includes counterclaims that merely restate an affirmative defense, as well as those which simply seek the opposite effect of the complaint." *Intercon*, 969 F. Supp. 2d at 1065; *see also Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1038 (N.D. Ill. 2014) (dismissing declaratory counterclaim in Lanham Act case because "once the Court rules on the merits of Count II of the Complaint, the question of whether Defendant infringed upon Plaintiff's marks will be resolved in its entirety").

The priority declaration is a restated affirmative defense. Section 1115(b)(5) is one of the "defenses or defects" to which even an incontestable registration is subject, 15 U.S.C. § 1115(b), and § 1115(a) makes it available against a contestable registration such as Xuchang's, *id.* § 1115(a) (registration "shall not preclude another person from proving any legal or equitable defense or defect, including those set forth in subsection (b)"). Defendants pleaded it as their First Affirmative Defense, and Counterclaim I describes its § 1115(b)(5) theory as "[t]his defense," which "applies in the areas in which Sunny Beauty proves qualifying continuous prior use." Dkt. 35, Countercl. ¶ 27. The two pleadings use nearly identical words. The First Affirmative Defense alleges that Sunny Beauty "adopted SUNNY HAIR in 2016 without knowledge of any prior use by Plaintiff and has continuously used it since before Plaintiff's October 30, 2025 constructive-use date." *Id.* at 22. Counterclaim I alleges that Sunny Beauty "adopted SUNNY HAIR without knowledge of any prior use by Xuchang and has continuously used the mark since 2016, before Xuchang's October 30, 2025 constructive-use date." *Id.*, Countercl. ¶ 27. As in *Bao*, any argument that the declaration reaches further than the defense "ignores the language in [Defendants'] own pleadings." *Bao*, No. 21 C 04119, Dkt. 26 at 12.

The priority question will also be decided on Sunny Beauty's own affirmative claims. Counterclaim III depends on Sunny Beauty owning "prior, protectable common-law rights in SUNNY HAIR," Dkt. 35, Countercl. ¶ 36, and the principal theory of Counterclaim II depends on Sunny Beauty having acquired rights "[b]efore Xuchang's asserted first use or application date," *id.*, Countercl. ¶ 32. The Court cannot rule for Sunny Beauty on Counterclaim III, or on Counterclaim II's principal theory, without deciding who used SUNNY HAIR first, and Counterclaim III and the First Affirmative Defense also require deciding where. A freestanding declaration of "priority over Xuchang within the scope of Sunny Beauty's established prior rights," *id.*, Countercl. ¶ 29, would only restate those rulings.

Counterclaim I's request for relief "whether or not Registration No. 8,311,515 is cancelled," *id.*, does not change the analysis. If the registration remains in force, whether Sunny Beauty's prior use shields it is the question the First Affirmative Defense presents. If the registration is cancelled, priority between the parties' competing claims to SUNNY HAIR will be decided under Count II and Counterclaim III. Either way, the question is already before the Court. Counterclaim I's noninfringement declaration, which this motion does not challenge, reaches it too: that relief is requested "to the extent of the prior rights and statutory defense established by the evidence," *id.*, and, with the priority language removed, Prayer ¶ B would still seek it "including protection for qualifying prior use even if the registration remains in force," *id.* at 35. Xuchang leaves that language and paragraph 27 in place because they define the scope of the noninfringement declaration. The priority declaration is the only part of Counterclaim I that asks for priority as freestanding relief, and it adds nothing but the label. This is not a case like *Sarkis' Cafe*, where a cancellation counterclaim survived because it "may potentially afford Defendant

different or additional relief than a finding of invalidity alone." *Sarkis' Cafe*, 55 F. Supp. 3d at 1039. Here, the distinct remedy of cancellation, 15 U.S.C. § 1119, is sought in Counterclaim II, which Xuchang leaves untouched; the priority declaration offers no relief beyond what Counterclaims II and III and the First Affirmative Defense already provide. The proposed order also strikes the conforming references to priority in Counterclaim I's caption and in the introductory clause of the Prayer for Relief, Dkt. 35 at 31, 34, which would otherwise describe relief no longer requested.

## II. *Square One* Does Not Save the Priority Declaration Because Sunny Beauty's Own Counterclaims Ensure a Merits Decision on Priority.

In *Square One*, this Court allowed Schedule A defendants to maintain duplicative counterclaims, reasoning that "a claim that a defendant sells counterfeit goods is serious and can affect the defendant's business beyond the particular case" and that "a defendant desiring a decision on the merits regarding the validity of a trademark or copyright should be able to have that decision without the plaintiff's consent," and observing that "[c]ounterclaims are a means of ensuring the Court reaches the merits when appropriate." *Square One*, No. 20 C 5685, Dkt. 104 at 6. Xuchang does not ask the Court to revisit that ruling, which is why this motion leaves Counterclaim I's noninfringement and no-counterfeiting declarations in place.

None of those concerns reaches the priority declaration. First, the counterfeiting accusation is answered by the no-counterfeiting and noninfringement declarations, which remain; Sunny Beauty's claim to be the senior user is answered by Counterclaims II and III, which also remain. Second, a merits decision on priority does not depend on Xuchang's consent. Sunny Beauty's Counterclaims II and III are independent claims for affirmative relief that Sunny Beauty controls. Because Defendants have answered, Xuchang cannot dismiss by notice, Fed. R. Civ. P. 41(a)(1)(A)(i); any stipulated dismissal would require Sunny Beauty's signature, Fed. R. Civ. P.

41(a)(1)(A)(ii); and where, as here, a defendant has pleaded a counterclaim, "the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication," Fed. R. Civ. P. 41(a)(2). Whatever becomes of Counts I and II, Counterclaims II and III can remain pending for independent adjudication, and priority will remain at issue in them. Nor is there any risk that the volume of Schedule A defendants will "obscure legitimate defenses." *Square One*, No. 20 C 5685, Dkt. 104 at 6. Sunny Beauty has appeared, answered, and pleaded priority throughout its pleading, and priority is a central issue on Defendants' motion to dissolve the temporary restraining order, on which the Court has set an evidentiary hearing. Dkt. 34; Dkt. 51. And the validity challenge that concerned the Court in *Square One* is Counterclaim II, which this motion leaves untouched. Nor would the priority declaration serve any purpose outside this case that Counterclaims II and III do not. If Sunny Beauty proves priority, the Court may "order the cancelation of registrations, in whole or in part," 15 U.S.C. § 1119, and a judgment on Counterclaim III will adjudicate Sunny Beauty's claimed prior rights as between these parties. A further declaration of "priority over Xuchang within the scope of Sunny Beauty's established prior rights" would add nothing to those judgments. Nor does striking the priority declaration affect Union Smulf; Defendants' pleading states that "[t]he claims of trademark ownership and priority . . . are asserted by Sunny Beauty, not by Union Smulf." Dkt. 35 at 24.

## III. Alternatively, the Court Should Decline Under § 2201(a) to Enter a Declaration That Would Serve No Useful Purpose.

Even apart from Rule 12(f), the Court has discretion to decline a declaration that serves no useful purpose. *Wilton*, 515 U.S. at 286–88. In a trademark dispute in which the party with a coercive claim has promptly sued on it, "a declaratory judgment would serve no useful purpose."

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987). Here, Xuchang sued for infringement, and Sunny Beauty has asserted its own coercive claims for cancellation and infringement based on the same claimed priority. When an existing suit will resolve the issues a declaratory claim raises, the declaratory claim serves no useful purpose because the controversy has already ripened into litigation that will resolve it. *See Bao*, No. 21 C 04119, Dkt. 26 at 13; *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002). That is the case here: as in *Bao*, the declaration "is not necessary to clarify the issues or resolve uncertainty." *Bao*, No. 21 C 04119, Dkt. 26 at 13.

## IV. Striking the Priority Declaration Costs Defendants No Issue, Defense, or Available Relief.

Striking the priority declaration deprives Defendants of no issue, defense, or available relief: every question it would answer is presented by the First Affirmative Defense and Counterclaims II and III. Sunny Beauty retains each of them, and both Defendants retain their denials and Counterclaim I's noninfringement and no-counterfeiting declarations. Defendants may respond that leaving the priority declaration in place would cost Xuchang little. This Court answered that argument in *Bao*: "While it may be true that keeping the declaratory judgment claim in this case would cause only minimal prejudice to Bao, the same is true of the inverse." *Bao*, No. 21 C 04119, Dkt. 26 at 13. Because "[t]he facts underlying its counterclaim are the same underlying its affirmative defenses," there was "little effect (if any) on the scope of discovery." *Id.* The same is true here. And as in *Bao*, nothing in Defendants' pleading shows why the priority declaration "is sufficiently unique when compared to [Sunny Beauty's] answer and affirmative defenses such that dismissing it would result in any material prejudice." *Id.* Because Defendants have demanded a jury on all issues so triable, Dkt. 35 at 36, removing the duplicative priority

declaration will also avoid redundant jury instructions and verdict questions on an issue already presented by the First Affirmative Defense and Counterclaim III.

## V. The Third Affirmative Defense Should Be Stricken Because Defendants Concede It Does Not Shift the Burden of Proof and Merely Repeats Their Denials.

Defendants' Third Affirmative Defense, captioned "Limitations on Monetary Relief," states that "Defendants deny infringement, counterfeiting, willfulness, and causation of Plaintiff's claimed losses," that "[a]ny monetary recovery must satisfy the elements, proof requirements, and equitable limitations of 15 U.S.C. § 1117," and that "Defendants deny that enhanced damages or attorney's fees are warranted." Dkt. 35 at 23. Defendants themselves describe it as a defense that "identifies limitations on Plaintiff's requested recovery and does not shift Plaintiff's burden of proof." *Id.*

That is not an affirmative defense. Limitations on monetary relief are not among the defenses enumerated in Rule 8(c)(1). The defense pleads no fact on which Defendants would bear the burden of proof. By Defendants' own description it "does not shift Plaintiff's burden of proof," Dkt. 35 at 23, and its denials only "controvert the plaintiff's proof" on liability, willfulness, causation, and damages. *Winforge*, 691 F.3d at 872 (quoting *Brunswick Leasing*, 136 F.3d at 530). And "an affirmative defense cannot merely repeat a defendant's denial of allegations contained in the complaint." *Sarkis' Cafe*, 55 F. Supp. 3d at 1041. Courts in this District strike negative defenses pleaded as affirmative defenses. *See, e.g.*, *Sarkis' Cafe*, 55 F. Supp. 3d at 1041–42 (striking with prejudice defenses that "each merely repeat various denials in Defendant's Answer and are thus unnecessary," including a "non-willful" defense, and explaining that "it is Plaintiff who bears the burden of proof as to Defendant's alleged lack of good faith or willful infringement"); *CFIT Holding Corp. v. Twin City Fire Ins. Co.*, No. 20 C 3453, 2020 WL 6273489 (N.D. Ill. Oct. 26,

2020), Dkt. 36 at 2–3 (striking "'affirmative' defenses that are in fact negative defenses" as affirmative defenses); *Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*, 487 F. Supp. 3d 722, 735–36 (N.D. Ill. 2020) (striking with prejudice defenses that "concededly only negate essential elements of Plaintiffs' claims" or "merely controvert an element of Plaintiffs' claims").

In *Square One*, this Court denied a motion to strike affirmative defenses, explaining that "[u]nless Plaintiff can explain why the Court should spend time analyzing the sufficiency of Defendants' affirmative defenses outside the standards of Rules 26 or 56, the Court finds it more efficient to wait until one of those motions is before it." *Square One*, No. 20 C 5685, Dkt. 104 at 7. This motion does not ask the Court to test how well a defense is pleaded. It asks whether the Third Affirmative Defense is an affirmative defense at all, and Defendants' pleading answers that question: the defense "does not shift Plaintiff's burden of proof." Dkt. 35 at 23. No Rule 26 or Rule 56 motion will present that question more cleanly than the pleading does now. And because Defendants have demanded a jury, *id.* at 36, settling the label now avoids a later dispute over whether the jury should be instructed on it as an affirmative defense. Striking it as an affirmative defense also costs Defendants nothing: their denials remain, and they may still contest liability, willfulness, causation, and damages. *See CFIT*, Dkt. 36 at 3 (negative defenses "struck as affirmative defenses").

Whether labeled affirmative or not, the defense is also redundant of Defendants' Answer, which already denies infringement, counterfeiting, willfulness, causation of Plaintiff's alleged injuries or damages, entitlement to profits and enhanced damages, and attorney's fees. *See, e.g.*, Dkt. 35 at 15–17, 20–21. The defense's remaining sentences describe what 15 U.S.C. § 1117 requires; the statute governs any monetary award whether or not Defendants plead it, so striking

those sentences deprives Defendants of nothing. Striking the defense removes unnecessary clutter. *See Heller*, 883 F.2d at 1294. That Defendants placed it under the heading "AFFIRMATIVE AND OTHER DEFENSES," Dkt. 35 at 22, does not change the result: as an affirmative defense it is insufficient, and as a denial it is redundant. Fed. R. Civ. P. 12(f).

**CONCLUSION**

Plaintiff and Counter-Defendant Xuchang Yinren Technology Co., Ltd. respectfully requests that the Court strike the priority declaration requested in Counterclaim I, as set out in the proposed order, or, in the alternative, decline to entertain that declaration under 28 U.S.C. § 2201(a); that the Court strike Defendants' Third Affirmative Defense or, at a minimum, strike it as an affirmative defense, *see CFIT*, Dkt. 36 at 3.

Dated: October 29, 2026

Respectfully submitted,

/s/ Zheng "Andy" Liu
Zheng "Andy" Liu (CA Bar No. 279327)
Aptum Law
1660 S. Amphlett Blvd., Suite 315
San Mateo, CA 94402
Email: Andy.Liu@AptumLaw.us
Phone: 650-475-6289

ATTORNEY FOR PLAINTIFF AND
COUNTER-DEFENDANT